(No. 28375.—
THE PULLMAN COMPANY *et al.*, Appellees, *vs.* THE ILLI-
NOIS COMMERCE COMMISSION, Appellant.

*Opinion filed March 21, 1945.*

GEORGE F. BARRETT, Attorney General, (WILLIAM C.
WINES, and STEPHEN M. FLEMING, both of Chicago, of
counsel,) for appellant.

LOWELL M. GREENLAW, ERWIN W. ROEMER, WILLIAM
J. BUTLER, JOSEPH H. WRIGHT, FRED J. MCMANUS, JAMES
A. GILLEN, and HARRY E. BOE, all of Chicago, for ap-
pellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

In March, 1942, the Pullman Company, the Illinois Central Railroad Company, the trustee of the Alton Railroad Company, the Chicago, Burlington & Quincy Railroad Company, the trustees of the Chicago, Rock Island and Pacific Railway Company and seven others filed with the Illinois Commerce Commission schedules of increased rates for accommodations in sleeping, parlor, club and lounge cars within the State of Illinois to go into effect on April 25, 1942, and later dates. April 21, the commission entered an order suspending until August 23 the proposed increased rates, fares and charges pending a hearing and decision concerning their propriety. May 7, the commission set the matter for hearing on May 28. Upon the hearing on May 28, witnesses testified in behalf of the Pullman Company and the railroad companies, and considerable documentary evidence was introduced. At the conclusion of the hearing, the examiner marked the matter "Heard and Taken." July 21, the commission, by a resuspension order, suspended the proposed increase in rates until February 23, 1943, six months beyond the first expiration date. The Pullman Company and the railroad companies involved heard nothing further from the commission until February 17, 1943, six days before the expiration of the second suspension order on February 23, when copies of an order entered by the commission on February 10, 1943, were mailed to the carriers. The order recites that the Pullman Company's intrastate revenue in Illinois, based on traffic for the year 1941, amounted to $164,780, and that the increase sought would produce an additional revenue of approximately $16,470; that an exhibit submitted by the Pullman Company setting forth the number of cars operated, the gross earnings, expenses, and net earnings of cars operated on lines wholly within this State during the calendar year 1941 indicated a net loss of $62,972.07; that this exhibit did not include any proportion of a wage in-

crease to employees based upon the mediation settlement of the wage dispute announced on December 1, 1941, by an emergency board appointed by the President of the United States; that another exhibit indicated the loss for 1941 would have been $68,538.49 had the wage increase and the proposed new rates been in effect during 1941; that exhibits of like tenor were presented by eight railroad companies "but in view of our conclusions herein it is not necessary to enter into a detailed discussion of the facts purported to be established in those exhibits and the oral testimony in the explanation of them." Additional recitals in the commission's order are that, on October 2, 1942, the Emergency Price Control Act was amended to provide that "No common carrier or other public utility shall make any general increase in its rates or charges which were in effect on September 15, 1942, unless it first gives thirty days' notice to the President, or such agency as he may designate, and consents to timely intervention by such agency before the federal, state, or municipal authority having jurisdiction to consider such increase," (50 U.S.C.A. 901,) and that "The record does not show that respondents gave the Administrator of the Office of Price Administration the thirty day notice required by the Act of October 2, 1942, * * * nor are we advised that respondents have consented to the timely intervention by the Office of Price Administration in this proceeding as required by the Act." The commission found that the Pullman Company and the railroad companies are public utilities, as defined by section 10 of our Public Utilities Act, (Ill. Rev. Stat. 1941, chap. 111⅔, par. 10;) that the rates, fares, and charges involved represent increases in effect on September 15, 1942; that the carriers proposed to increase rates approximately ten per cent; that they failed (1) to give thirty days' notice to the Office of Price Administration of intention to increase rates, fares, and charges in effect on September 15, 1942, and (2) to consent to the timely intervention of the

Administrator of the Office of Price Administration in this proceeding; that the proposed increased rates were unlawful; that the tariffs described in the order should be cancelled, and that the carriers should issue appropriate supplements effective on one day's notice on or before February 23, 1943, cancelling the proposed tariffs. Petitions for rehearing were filed. The petition of the Pullman Company assailed the order of February 10, 1943, upon the grounds, among others, that it was not based on any statutory authority conferred on the commission by the Public Utilities Act; that it was predicated on an erroneous conception by the commission of its powers, since neither the Federal Act of October 2, 1942, nor any rule or regulation of the commission required notice to it of the company's compliance with the Federal law; that, in fact, the company did give the required thirty days' notice to the Office of Price Administration and had consented to the timely intervention of its Administrator in the proceeding, as required by the Federal act, and that the order was otherwise contrary to law and the uncontradicted evidence. The petitions of the railroad companies are substantially to the same effect, each alleging that notice of the pendency of the proceeding had been given the Office of Price Administration thirty days before the effective date of the fares and that, apparently, the Federal agency was not interested for the reason no intervening petition was filed with the commission. March 25, 1943, the petitions for rehearing were denied. Upon appeal by the Pullman Company and the four railroad companies previously named, the superior court of Cook county found that the commission's order of February 10, 1943, did not contain sufficient findings; that there was no evidence to support the findings made; that the order was against the manifest weight of the evidence presented to the commission; that the former rates which the cancellation of the new rates would leave in effect were confiscatory and, further, that the commission

exceeded its power in making the order. Accordingly, the order was adjudged unreasonable and unlawful, and set aside. The Commerce Commission prosecutes this appeal.

Seeking a reversal, the commission contends that the Emergency Price Control Act of 1942, as amended, justified its order of February 10, 1943. This contention has been decided adversely to defendant. (*Fleming* v. *Commerce Com.* 388 Ill. 138; *Illinois Central Railroad Co.* v. *Commerce Com.* 387 Ill. 256.) The amendment of October 2, 1942, to the Emergency Price Control Act is not retroactive, and where, as here, proceedings were instituted and the hearing of evidence was concluded prior to the effective date of the amendment, the failure to give notice to the Price Administrator of the Office of Price Administration of a proposed general increase in railroad or other public utility rates does not affect the jurisdiction of the Illinois Commerce Commission, lawfully acquired, to enter an order granting or denying any increase. The record discloses that the proposed tariffs were filed with the commission in March, 1942. Thereafter, successive temporary suspension orders were entered. A hearing was had and completed on May 28, 1942. The amendment to the Emergency Price Control Act of 1942 was passed by the Congress on October 2, 1942. Referring to the notice required to be given conformably to the Federal statute, we observed, in *Fleming* v. *Commerce Com.* 388 Ill. 138: "The failure to give such notice did not affect the jurisdiction or powers of the commission, nor in any way change or enlarge the issues. That act only gives to the Director of Economic Stabilization the right to intervene and be heard. It, in nowise, affected the jurisdiction of the commission."

So far as the record discloses, the carriers received no intimation prior to receipt of copies of the order of February 10, 1943, that the matter of compliance with the Federal law was under consideration by the commission. Indeed, the commission made no findings of fact either for

or against the reasonableness of the proposed rates, resting its decision upon the proposition that the rates were illegal solely because of an alleged failure to give notice to the Office of Price Administration. The petitions for rehearing filed by the carriers alleged that notice had been given. The commission's finding that the carriers failed to give notice to the Office of Price Administration is not supported by any evidence in the record. No evidence was adduced before the commission as to whether notice had, or had not, been given. Denial of the petitions for rehearing impels the conclusion that the commission assumed the proposed new rates were invalidated by failure to notify the commission itself concerning the notices to the Office of Price Administration, irrespective of whether notices had actually been given to the Federal agency. The mere statement of this theory carries its own condemnation. The situation presented by the record is, in short, that the commission entered an order invalidating the proposed rates, charges and tariffs, upon a ground beyond its delegated powers, without a hearing upon the question it deemed decisive in the disposition of the application for increased rates, and without notice to the parties involved that it proposed to dispose of the application on a matter not argued and concerning which no evidence was introduced. Section 36 of the Public Utilities Act (Ill. Rev. Stat. 1941, chap. 111⅔, par. 36,) provides that on a hearing with respect to rates, the commission shall establish the rates or other charges proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable. The commission's authority to act in rate matters is derived solely from the Public Utilities Act and, on the question of rates, it is limited by section 36 to determining whether they are unjust and unreasonable. (*Lowden* v. *Commerce Com.* 376 Ill. 225.) This statute affords no basis for determining whether a utility, in changing rates, has violated a Federal statute. The commission did

not perform its statutory duty of determining the reasonableness of the new rates but, instead, held them invalid upon a ground it lacked authority to consider. The commission's order must be based upon evidence presented at the hearing. Facts conceivably known to the commission but not put in evidence will not support an order. (*Rockwell Lime Co.* v. *Commerce Com.* 373 Ill. 309.) We recur to our observations in *Fleming* v. *Commerce Com.* 388 Ill. 138, that a hearing before the commission is not a partisan hearing with the commission on one side arrayed against the utility on the other, but that it is, instead, an administrative investigation instituted for the purpose of ascertaining and making findings of fact. Here, the commission's action in basing its final order upon the question of notice to a Federal agency, a matter upon which no evidence was presented and which the commission itself, for the first time, raised in its final order, was arbitrary and capricious in the extreme.

We are constrained to observe that the questions presented for decision are relatively simple and, had they been decided with reasonable dispatch, the commission's order would have been filed prior to October 2, 1942,—not more than four months afterwards. The evidence demonstrated, without contradiction, that an increase in rates, fares, and charges was warranted. In *Smith* v. *Illinois Bell Telephone Co.* 270 U. S. 587, the Supreme Court of the United States, referring to the delay in the entry of a valid order after new rates had been filed, characterized the commission's duty as "the delicate and important duty of regulating the rates of a public utility with fairness to its patrons, but with a hand quick to preserve it from confiscation," and pointedly adding, "Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them."

The order of the superior court of Cook county is affirmed.

*Order affirmed.*