(No. 43067.—

Hedvie L. Hamilton *et al.*, Appellees, *vs.* Illinois Commerce Commission, Appellant.

*Opinion filed December 4, 1970.*

William J. Scott, Attorney General, of Springfield, and Peter A. Fasseas, Special Assistant Attorney General, of counsel,) for appellant.

Coryn, Patton & Walker, of Rock Island, (William M. Walker and James J. Coryn, of counsel,) for appellees.

Mr. Justice Burt delivered the opinion of the court:

This is an action to review an order of the circuit court of Henry County reversing and remanding with specific instructions an order of the Illinois Commerce Commission denying approval of a proposed transfer of a common carrier trucking certificate.

Russell Hamilton of Geneseo had for many years operated as a general hauler in the area with a truck permit issued under the grandfather clause of the Illinois Motor Carrier of Property Act (Ill. Rev. Stat. 1967, ch. 95½, par. 282.9), until his death on December 6, 1967. Six months later, on June 13, 1968, the certificate held by decedent was transferred at the request of the widow, Hedvie Hamilton, into her name.

On October 18, 1968, a joint verified application for transfer of this certificate to Henry Pritchard, Inc., was filed by Hedvie L. Hamilton and Henry Pritchard, Inc., which was "heard and taken" on November 22, 1968, by an examiner for the Illinois Commerce Commission. On December 18, 1968, the Commission in conference and on its own motion reopened this matter for the purpose of accepting additional testimony. The parties were notified of the new hearing to be held in Springfield on February 24, 1969, but at the written request of applicant's counsel this hearing was continued to April 4, 1969, and subsequently continued to April 14, 1969.

On March 14, 1969, the Commission was asked by letter from counsel for applicants, to cancel the hearing as applicants wished to stand on the record made at the hearing on November 22, 1968.

Accordingly, the Commission entered an order denying the application on May 7, 1969, on the grounds that "the evidence does not indicate that the Transferor has not abandoned, suspended, or discontinued her operations," and that "the findings required by Section 13 of the Act, before a transfer can be approved, cannot be made in this case." A petition for rehearing was filed and allowed and set for July 16, 1969, but on that date the attorneys for applicants filed a motion for adoption of the same evidence adduced at the first hearing as applicants' evidence on rehearing, and the motion was allowed. No further evidence was produced.

The findings of the Commission were incorporated in an order dated August 20, 1969, stating, "no additional evidence having been presented by the Transferor and Transferee on rehearing, said Transferor and Transferee having accepted the evidence adduced at the first hearing of this matter as evidence on this motion and there being no additional evidence for consideration by the Commission, the Commission's Order of May 7, 1969, should be reaffirmed."

Petitioners appealed to the circuit court which found that the undisputed evidence showed that transferor had not abandoned, suspended or discontinued operations, and reversed the Commission and ordered it to transfer the certificate as requested. From this order the Commission appeals.

The Illinois Motor Carrier of Property Act (Ill. Rev. Stat. 1967, ch. 95½, par. 282.13(c), requires that prior to granting a transfer of a certificate of public convenience and necessity the Commission must find that the transferor has not abandoned, suspended or discontinued operations, after public notice and hearing.

At the hearing on the application for transfer, evidence must be introduced and the Commission can only make such finding when there is affirmative evidence of continued operation in the record. *Chicago, Burlington & Quincy Railroad Co. v. Commerce Com.*, (1951), 410 Ill. 60, 66; *Chicago Junction Railway Co. v. Commerce Com.* (1952), 412 Ill. 579, 586.

The evidence produced by applicants was meager, although the record shows several opportunities to produce evidence. On two occasions after the original hearing the applicants asked for reconsideration of the original order of denial, and then declined to come forward to try to strengthen their case, but rather elected to stand on the original record.

Three witnesses testified for applicants. First, Mrs. Hamilton testified to having the trucking certificate trans-

ferred to her name after her husband's death, and then there was the following colloquy:

"Q. Were you familiar with the type of operation [trucking operation], that your husband performed over the years?

A. Well, some, I guess, yes.

Q. In your mind, he was in a general trucking business?

A. Yes, he was.

Q. And in substance, did he haul anything or everything that anyone would ask him to haul to any points in the State?

A. Yes, sir.

Q. When he was requested to do that?

A. Yes, sir.

Q. Did he continue that from the time before there was a truck act, down to the time of his death?

A. Yes, sir.

Q. He held himself out to the general public to be available for the transportation of the commodities authorized by his certificate in the territory authorized by his certificate?

A. Yes, sir.

Q. After he passed away, you were appointed Administrator or Executor of his estate?

A. Yes, sir.

Q. You took the necessary steps to have the certificate transferred to you?

A. Yes.

Q. You don't feel you are capable of operating a trucking business now, do you?

A. No.

Q. For that reason you have entered into an agreement to sell the certificate to Henry Pritchard, Incorporated, and Mr. Pritchard himself individually is here today?

A. Yes, sir.

Q. And to the best of your knowledge, so long as your husband and you have been the owners of this certificate, you have held yourself out to the general public to perform the service authorized by this certificate?

A. That is right.

Q. You are asking the Commission to grant the transfer?

A. Yes, sir."

Next, applicants called Clarence Swanson, a competitor, who described the type of trucking business conducted by the deceased husband of Hedvie Hamilton in his lifetime. He was asked these questions and answered as follows concerning Russell H. Hamilton, deceased:

"Q. Did he hold himself out to the public to be available for the transportation of those commodities to practically all points in the State of Illinois?

A. Yes, he did.

Q. You observed him from time to time?

A. Yes.

Q. You know of your own knowledge he did not permit a certificate to lapse or not hold himself out to the public to be in the trucking business?

A. No, I do not know that."

Lastly, applicant Henry L. Pritchard, Jr., testified as to his own operations in the trucking business as a statewide operator hauling general merchandise, and as to his plans for future operations. This was the substance of the entire testimony for petitioners.

None of these witnesses offered any testimony on the question of whether the Hamilton business had been abandoned, suspended or discontinued after the death of Russell Hamilton, and it seems obvious that the widow knew little about the business. No evidence was offered as to the equipment used in the trucking operations, nor the

commodities hauled for the shippers for whom property was transported since Hamilton's death. The Commission determined that the record contained no evidence upon which it could base a finding that Mrs. Hamilton had not abandoned her trucking operation.

A review of the Commission's order under the Illinois Motor Carrier of Property Act is governed by the provisions of section 68 of the Public Utilities Act (Ill. Rev. Stat. 1967, ch. 111⅔, par. 72) which provides: "The findings and conclusions of the Commission on questions of fact shall be held prima facie to be true * * * and a rule, regulation, order or decision of the Commission shall not be set aside unless it clearly appears that the finding of the Commission was against the manifest weight of the evidence * * *." *McMann v. Commerce Com.*, 38 Ill.2d 126.

In the case at bar, no evidence was denied admission by the examiner. The Commission's order was not against the manifest weight of the evidence because there was no proof of continued operation. The Commission's order set out sufficiently specific reasons for denial of the application.

We therefore reverse the circuit court and affirm the Commerce Commission.

*Circuit court reversed;*
*order of Commission affirmed.*