SUNSET TRAILS WATER COMPANY, Plaintiff-Appellant, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.

(No. 72-5;

Third District—August 25, 1972.

*Rehearing denied October 12, 1972.*

Robert N. Caffareli, of Chicago, and L. Park Davis, of Kroesch & Davis Ltd., of Joliet, for appellant.

William J. Scott, Attorney General, of Chicago, (James R. Sullivan, of counsel,) for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Will County affirming an order of the Illinois Commerce Commission which denied the application of Sunset Trails Water Company for a Certificate of Public Convenience and Necessity to operate a public utility water system for the purpose of providing service to a 15-acre tract of land entirely within the corporate limits of the Village of New Lenox. The Village of New Lenox had appeared as an objector. In view of the amendment to Supreme Court Rule 302 (a) effective July 1, 1971, which

deleted the requirement that appeals must be taken directly to the Supreme Court in proceedings to review orders of the Illinois Commerce Commission, we find that we have jurisdiction to entertain the appeal. (Ill. Rev. Stat. 1971 ch. 110A, par. 302 (a).)

At the time of the filing of Sunset's application, some of the residents of the village received water service from Illinois Municipal Water Company while others depended upon private wells located on their properties. The wells of Illinois Municipal are located approximately ½ mile from the village, and one of its mains passes within a few hundred feet of the tract sought to be served by Sunset. The owner of the 15-acre tract of land, for which Sunset sought to operate a public utility water system, caused the tract to be subdivided and started to develop part of it at a time which we note was apparently in the early 1960's. At the time of the filing of Sunset's application, townhouses capable of accommodating 60 families had been erected or were in the process of erection on the tract. While the subdivider stated that he had no immediate plans for further construction, he estimated that some 60 to 70 additional family dwelling units would be erected on the part of the subdivision as yet unimproved. The subdivider had installed a small water system of his own early in 1962 and since that time has furnished free water service to those residing in the subdivision, most of whom, it appears, occupy the buildings as tenants.

Sunset Trails Water Company was incorporated on March 6, 1967, and is presently owned by the subdivider. Sunset has been inactive in a business sense due to the fact that it had no certificate of public convenience and necessity. The Sunset application for such certificate was not filed until May 22, 1970. There are indications in the record that the subdivider was finally prompted to act, in part, by a desire to expedite the sale of some lots in the unimproved part of the subdivision. There was also some indication that the effort to obtain the certificate coincided with the firm efforts on the part of the village to establish its own water system.

The subdivider testified that he requested Illinois Municipal in January of 1968 to furnish water service to the dwellings then in the subdivision but that Illinois Municipal refused. He testified later that his January, 1968 conversation with Illinois Municipal concerned a possibility of the latter acquiring the water system in the subdivision, but that he rejected the proposal because the village was contemplating a water system. It appears that the village of New Lenox came under a new administration in 1967 which began the move toward a municipal water system. During 1968, talks were had by the village authorities with Illinois Municipal about purchasing Illinois Municipal's system, but negotiations

were suspended and a decision was reached to develop an entirely new system in the village. A survey of the residents was made and when a favorable response was received a bond issue of $1,200,000 was authorized in 1969 for development of a water system. After difficulty had been encountered in selling the bonds, the village, at about the same time Sunset filed its application, negotiated again for the purchase of Illinois Municipal in the belief that with such an established base in which to start, its development bonds would be more marketable.

At the hearings before the examiner, Sunset introduced proof of the physical make-up of its water system and its capability of providing water to the entire subdivision. In summary, the system consisted of one well, hydropneumatic storage facilities with a capacity of about 400 gallons, pumps, 780 lineal feet of 6" cast iron water mains, 920 feet of 4" cast iron mains, and chlorination and fluoridation equipment and related appurtenances. Early in 1967, the Illinois Department of Public Health recommended that Sunset either install an adequate-sized hydropneumatic storage tank or an auxiliary source for well pumps, to insure a continuous water supply at all times. At the time of the hearing, Sunset had not complied with such recommendations. However, on November 18, 1970, by a letter designated in the record as a "late" filed exhibit, the Illinois Environmental Protection Agency gave its approval to a plan of Sunset to install a 9,000 gallon hydropneumatic storage tank. At the time Sunset was given a permit for its original well in 1962, it was likewise given a permit to put in a second well as a stand-by well. An engineer testifying for Sunset stated that no plans had as yet been made for a second well, and conceded that the system would be faced with a "serious problem" in the event the first well should fail. The subdivider, however, stated that a stand-by well was available nearby which could furnish sufficient water for consumption and sanitary purposes until such time as the original well was put back into operation. The evidence also indicated that there would be but one fire hydrant in the subdivision system which would be functional only if the 9,000 gallon tank previously referred to was installed. The engineer stated that water could not be placed upon a fire from a hose directly connected to the hydrant but sufficient pressure to do so could be obtained by attaching the hydrant to a pump or fire truck. He indicated that the 9,000 gallon tank contemplated would permit self-contained water tanks in the village fire trucks to be filled twice.

Witnesses for the village gave testimony relating to the plans of the village for development of the unified system and to the steps taken and to be taken to implement such plan. Such witnesses expressed an opinion that a unified system within the corporate limits was more feas-

ible from a standpoint of service, maintenance and fire protection. It was established that an agreement had been reached with Illinois Municipal to purchase its system for the price of $130,000; that attorneys were in the process of drafting the agreement; that arrangements for financing the purchase had been made; that the initial construction phase included the erection of a 250,000 gallon elevated storage tank; and that plans for the development and expansion of the system throughout the village had been made. It was brought out on cross-examination that the initial stages of development and construction did not contemplate the extension of service to the subdivision, inasmuch as the subdivider had made no request for such service. There was testimony, however, that development plans called for eventual expansion throughout the village including the subdivision. It, therefore, appears that, as the order of the Commission implies, the village by its appearance and objection and procedure in the hearing necessarily demonstrated its willingness to serve the area sought to be served by Sunset.

In finding that the certificate should be denied to Sunset and in concluding that the granting of a certificate would neither promote the public convenience nor be necessary thereto, the order of the Commission made findings of many of the evidentiary facts to which we have referred and set forth the guidelines for its decision as follows:

"In determining the public interest the Commission must decide whether or not the creation of a small independent privately owned water utility should be allowed when a larger public utility water system is already in existence, contiguous to the area needing water service and plans have been formulated by the municipal corporation to acquire said facilities and improve and expand the system throughout the corporate limits; the determination should be based upon a comparison of the advantages, disadvantages, economics, experience, inexperience and capabilities of the proposed water utility with those of the existing water utility under private or public ownership as such matters affect the ultimate consumers of the water; * * *".

■■■ On appeal in this Court it is first contended by Sunset that the village was without standing to object or intervene in the proceeding and that the Commission, therefore, exceeded its authority both in permitting the village to object and in basing its order in part on such objections. We do not believe that such contention is sound either from a procedural or substantive standpoint. Section 67 of the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 71), expressly provides that "no person or corporation in any appeal shall urge or rely upon any grounds not set forth" in the application for rehearing before the Commission. We note

that the standing of the village to object was not advanced as a ground by petition for rehearing filed by Sunset in this case. (See: *Granite City v. Commerce Com.,* 407 Ill. 236.) Such contention should, therefore, not now be raised on appeal. On the question of the right of the city to participate in the hearing, we also note that under section 64 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 68), it is directed that in any hearing before the Commission relating to rates or service within a city, the city shall be entitled to appear and present evidence relating to the subject matter of such hearing. It is clear that the village of New Lenox had the right to participate in this proceeding.

■■ The parties to this cause, in their briefs, have discussed a doctrine to which we have long adhered in the field of public utility law, sometimes referred to as the "first in the field" doctrine. This doctrine specifically directs that when an existing utility is located and operating in an area contiguous to an area to which service is sought to be extended, that utility, as opposed to a potential competing utility, would be entitled to a certificate of public convenience and necessity to serve the new area, provided it demonstrates its willingness and ability to provide such service. (*Citizens Valley View Co. v. Commerce Com.* 28 Ill.2d 294; *Illinois Power & Light Corp. v. Commerce Com.,* 320 Ill. 427.) Both parties in this action seek to bolster their position by reliance on elements of the doctrine. The village, for example, asserts that it succeeded to the "first in the field" rights of Illinois Municipal by its purchase of the latter company. (See: *Illinois State Telephone Co. v. Commerce Com.,* 39 Ill.2d 239, 243.) Sunset, on the other hand, argues that even if the village acquired the right of Illinois Municipal, the application of Sunset should have been granted because the village failed to establish that it was ready, willing and able to provide service to the area sought to be served by Sunset. From our analysis of the order of the Commission, however, we believe it did not purport to rely upon the "first in the field" doctrine in reaching its ultimate conclusions, and that, under the unique circumstances revealed by the record, it is our opinion that the doctrine of "first in the field" could not apply or control in this case.

■■ Illinois Municipal, the acknowledged possessor of "first in the field" rights when the hearing took place, did not appear at the hearings, although given notice, and made no claim of a right to serve the territory embraced in the application of Sunset. While terms had been agreed upon, the purchase by the village of Illinois Municipal facilities had not been consummated either at the time of the hearings or on the date of the Commission's order. The Commission was thus confronted not with the claim of an existing utility, but with two adversaries, neither of which had the present ability to give service to the disputed area. Sunset, on

one hand, while having a system which provided service to the existing dwellings in the subdivision, had not as yet complied with the mandatory recommendation of the Illinois Department of Health that the installation of a larger hydropneumatic tank was necessary for satisfactory water service. It also appears Sunset had never developed a second well and had no stand-by well at all, or, if one was available, its potential was minimal. Similarly, the village, while it had reached an agreement to purchase Illinois Municipal, was only in the initial stage of its plans for the development of the municipal system. The Commission was, therefore, faced with a question of which of the two claimants should be permitted to develop the proposed system. The "first in the field" doctrine was, therefore, not the basis upon which the Commission necessarily founded its order as we have indicated.

██ It was next urged by Sunset that certain of the findings of the Commission's order lacked specificity and that the findings it did make are contrary to the law and the evidence. Attack is made particularly upon the finding hereinabove set forth, where the Commission made its finding of ultimate fact that public interest would best be served by a single unified system within the village. In our consideration of these contentions we are guided by well-defined and long-established limitations. The law does not permit a court of review to try a controversy anew and substitute its judgment for that of the Commission. (*United States Gas Co. v. Commerce Com.*, 48 Ill.2d 36.) We, also, may not set aside an order of the Commission unless it clearly appears that its findings are against the manifest weight of the evidence, or unless the Commission has acted beyond its authority, or has infringed upon a substantial constitutional right. (*Galt v. Illinois Commerce Com.*, 28 Ill.2d 501; *Chicago Junction Railway Co. v. Commerce Com.*, 412 Ill. 579.) It has likewise been recognized that decisions of the Commission are entitled to great weight as being the judgment of a tribunal appointed by law and possessing an expertise in the field of public utilities born of informed experience. *Iowa-Ill. Gas & Electric Co. v. Commerce Com.*, 19 Ill.2d 436.

██ As we have observed, the real issue before the Commission was the choice as to which of the two systems proposed alternately by Sunset and the village should be permitted to develop. The order of the Commission, based upon its experience and expertise, reached the conclusion that public interest would best be served by a unified water system within the village and that the granting of a certificate to Sunset would neither promote public convenience nor be necessary thereto. In our opinion, these conclusions were reasonable and fully supported and justified by the record. There is substantial evidence in the record to support all

of the findings including the ultimate findings. The record shows that the village had taken substantial steps toward development of a unified system within the village, and that such a system would be far superior to the one proposed by Sunset viewed from standpoints of emergency or stand-by service and fire protection. It reasonably appears that fire protection would be substantially less effective in the subdivision if the unified system was to be fragmented by granting the application to Sunset. While this was not indispensable to the order, the record also shows, as the order indicated, that the financial position of the village was superior to that of Sunset. The total assets of Sunset, less physical assets, was only $3,000 as against outstanding liabilities of $18,771.40 and outstanding common stock of $27,770. Insofar as public interest is involved, the benefits accruing both to the entire village and the subdivision from the proposed unified system far outweigh any potential benefits which could accrue from granting of the Sunset application.

■■ Nor do we find merit in Sunset's complaint that the order of the Commission is deficient because certain of the evidentiary facts were omitted from its findings. It is not necessary to make a particular finding as to each evidentiary fact or claim. (*United Cities Gas Co. v. Commerce Co.*, 47 Ill.2d 498.) The Commission made sufficient findings in this case to support its order, and we have indicated that those findings had substantial foundation in the evidence.

■■ Objection is made to certain matters which were appended to the brief of the Commission, none of which existed or were placed in evidence at the time of the hearing but which show progress of the village in the development plan testified to at the hearing. We agree that such matters are *dehors* the record and may not be considered by a court of review, and, accordingly, we have not considered them in our determination. *People v. Evanston Ry. Co.*, 323 Ill. 109, 112.

For the reasons stated in this opinion, we believe that the judgment of the Circuit Court of Will County affirming the order of the Illinois Commerce Commission is supported by the record and is required to be affirmed. Such order is, therefore, affirmed.

Order affirmed.

STOUDER, P. J., and DIXON, J., concur.