GEORGE D. COOPER, d/b/a Cooper Cartage, *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

First District (2nd Division)    No. 76-453

Opinion filed May 24, 1977.

DOWNING, P. J., dissenting.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos and Rodney C. Howard, Assistant Attorneys General, of counsel), for appellant.

James C. Hardman and Joseph Winter, both of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This is an action to review an order of the Circuit Court of Cook County, reversing and remanding an order of the Illinois Commerce Commission (hereinafter "Commission") denying approval of a proposed transfer of a certificate of public convenience and necessity from Cooper Cartage (hereinafter "transferor") to La Porte Transit Co., Inc. (hereinafter "transferee"), appellees. The Commission's order, as entered, modified transferor's certificate of authority upon a finding that certain territory within this authorization was deemed to have been abandoned, suspended or discontinued within the purview of the Illinois Motor Carrier of Property Act. (Ill. Rev. Stat. 1973, ch. 95½, par. 18—100 *et seq.*) The proposed transfer was approved with this modification. The sole question presented for review is whether the Commission's finding regarding the allegedly abandoned area is contrary to the manifest weight of the evidence.

It appears of record that since January 26, 1955, transferor was

possessed of a certificate issued by the Commission authorizing transferor to perform a transportation service in intrastate commerce within the State of Illinois limited to the following commodities and territory:

"General commodities and raw milk within a fifty (50) mile radius of 547 North Milwaukee Avenue, Libertyville, Illinois, and to transport such property to or from any point outside of such authorized area of operation for a shipper or shippers within such area."

Service was not authorized over regular routes. Thus, transferor's services may be provided from, to or between areas over any highways and without scheduled or regular routes between predestined points.

By joint verified application filed September 25, 1972, appellees sought to transfer this authority. Petitions for leave to intervene were filed by counsel for several motor carriers (hereinafter "intervenors"). The matter came on for a hearing on February 6, 1973, July 3, 1973, September 18, 1973 and October 19, 1973. On June 4, 1975, an order of the Commission, entered May 28, 1975, was served recommending that a certificate be issued to transferee. However, this order cancelled a portion of the territorial description utilized in the transferor's certificate and limited such authorization to service within the political boundaries of Cook, Du Page, Kane, Lake and McHenry Counties, Illinois. This modification was ordered on the ground that, insofar as the excluded territory was concerned, there had been an abandonment, suspension, or discontinuance of operations.

Appellees appealed this order of the Circuit Court of Cook County which found that the Commission had erred in finding that transferor had abandoned, suspended or discontinued operations and remanded the cause for further proceedings on the authority of *Be-Mac Transport Co. v. Illinois Commerce Com.* (1967), 38 Ill. 2d 154, 230 N.E.2d 216. From this order the Commission appeals.

A review of the evidence adduced at the various hearings on the proposed transfer indicates that during the time George D. Cooper held his authority he maintained terminals in Chicago and Libertyville, Illinois, operated 18-20 trailers, 6-8 tractors and 3 trucks, employing 10-11 drivers and clerical support personnel. Approximately 50% of his yearly revenue was gained from Illinois intrastate commerce. Cooper testified that Cooper Cartage held out service to all points authorized by its certificate continuously during this period. To this end, Cooper placed periodic advertisements in a motor freight directory. He also maintained tariffs and insurance covering the entire territory within the scope of his authority.

Transferor also introduced evidence regarding an abstract of approximately 3,000 representative shipments relative to his operations between March 1, 1971, and March 31, 1972. Summaries of the points

served by this operation were also adduced. It appears that a considerable portion of this traffic was routed on an "interline" basis.[1] Under this mode of service two carriers combine their authority at a common gateway point. Thus, where the volume of business and the size of an individual shipment are such that it is unprofitable to route the transferor's own vehicle directly to the delivery point, the shipments are transferred to the connecting carriers for delivery. There is no dispute that the "interline" mode of delivery constitutes common practice in the trucking industry or that the practice was so employed by the instant transferor.

After March of 1972, transferor was compelled to curtail his business due to the steadily deteriorating health of his spouse. In May 1972, Cooper advertised that his operation was for sale. La Porte responded to this solicitation and in May and June 1972 attorneys for La Porte commenced negotiations for the purchase of Cooper's equipment and the assignment of his authorization. These negotiations culminated in a purchase agreement executed in June 1972.[2]

Cooper testified that during the course of these negotiations he continued to operate his business and to this end retained five employees. Upon execution of the purchase agreement, Cooper placed the bulk of his equipment into storage for La Porte until they were able to obtain operating rights. By the time such authorization was obtained in December 1972, Cooper was operating "by himself" since his drivers had sought other employment. Cooper retained two trucks for this purpose. Transferee thereafter operated under the certificate in question pursuant to a grant of temporary authority. Cooper indicated that should the instant petition be denied he would be able to recommence operations.

Representatives of various carriers also testified before the Commission in opposition to the application for permanent transfer. None characterized transferor as a competitior and identified the base of his operations, when known, as the Libertyville area. However, none testified that their operations had experienced any diversion of traffic during the period of time that the certificate was operated under the temporary authority of transferee. It appears that these intervenor's clients were shippers with whom they had long-standing business relationships. None testified that they had received notice from such

---

[1] Transferor indicates that the following points were served on an "interline" basis: Belleville, Bloomington, Bushnell, Canton, Carbondale, Cherry Valley, Danville, DeKalb, Dwight, E. St. Louis, Harrisburg, Huntley, Mt. Vernon, Macomb, Mattoon, Moline, Percy, Plano, Quincy, Springfield and Sterling. It appears that only DeKalb is situated within transferor's radius of authority.

[2] The actual purchase price is unclear from the record. The sale was characterized as a "package deal" amounting to $80,000 of which $17,500 was allocated for the purchase of transferor's authority to carry goods.

shippers that a diversion of traffic would be forthcoming. Indeed, it appears that tonnage and revenues have been regularly increasing on a yearly basis.

The governing statute is section 18—309(c) of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1973, ch. 95½, par. 18—309(c)) which provides in pertinent part:

> "If the Commission finds that (1) the proposed purchaser or lessee is fit, willing and able, (2) that the proposed seller or lessor has not abandoned, suspended, or discontinued operations, and (3) that the transaction proposed will be consistent with the public interest and the policy declared in this Chapter and that the conditions of this Section have been or will be fulfilled, it shall enter an order approving and authorizing such transfer, consolidation, merger, purchase, lease operating contract, or acquisition of control, upon such terms and conditions as it finds to be just and reasonable."

Within this context, section 68 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72) mandates in relevant part:

> "The findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; and a rule, regulation, order or decision of the Commission shall not be set aside unless it clearly appears that the finding of the Commission was against the manifest weight of the evidence presented to or before the Commission for and against such rule, regulation, order or decision, or that the same was without the jurisdiction of the Commission."

■■ Dormancy has been defined as "an abandonment or termination of services the reactivation of which will result in damage either to the public interest or to intervening or protesting carriers who conducted operations during the interruption of said services."

■■ A carrier need not demonstrate service to all points on all routes within his authorized area in order to avoid a finding of abandonment. Within this context, where the prospective transferor of a certificate of public convenience and necessity advertises and provides service to points within the scope of such certificate, he shall not be deemed to have abandoned such areas notwithstanding the fact that such service was provided by "interlining" with other carriers. *Be-Mac Transport Co. v. Illinois Commerce Com* (1967), 38 Ill. 2d 154, 230 N.E.2d 216.

■■ To be sure, dormant services should not be reinstated without a showing of public need. Those opposing such a transaction must establish with some particularity the extent to which their operations might be harmed by approval of the application. This is in accord with relevant Federal authorities. See *Be-Mac Transport Co. v. Illinois Commerce Com.* and cases cited therein.

In the instant case, the Commission's approval of the proposed transfer of authority, albeit encumbered by the limitations currently at issue, remains unchallenged. By virtue of this approval the Commission has determined that Cooper's operations within the limited five-county area had not been abandoned, suspended or discontinued during the time after March 1972 in which Cooper placed his authorization on the market and negotiated with La Porte for the sale of his equipment and such authorization. Based upon the testimony adduced in the case at bar we conclude that the Commission's finding in this regard was proper. Such evidence indicates (1) that at all times relevant to the instant cause the transferor held himself out to handle and solicited traffic from the entire territory within the scope of his authority; (2) that during such time he maintained tariffs and insurance with respect to all such territory; and (3) that transferor was providing services to a representative number of points within the territory authorized prior to the time of application for transfer. To be sure, due to the scope of transferor's operations such service was limited. However, there is no indication that such limited service signals abandonment, suspension or discontinuance of operations within the context of the relevant statutory provisions. Similar evidence was not adduced in the case of *Hamilton v. Illinois Commerce Com.* (1970), 47 Ill. 2d 264, 265 N.E.2d 156, relied upon by appellant.

■■ By virtue of this analysis we are at a loss to explain the arbitrary exclusion of the territory at issue from the authorization approved by the Commission. As previously noted, the reduction of Cooper's operations after March 1972 did not, of itself, constitute an abandonment, suspension or discontinuance of his services within the purview of section 18—309(c) of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1973, ch. 95½, par. 18—309(c)). Nor does it appear that Cooper held himself out for service or limited his solicitation of traffic or restricted his tariffs or insurance exclusively to the political boundaries of Cook, Du Page, Kane, Lake and McHenry Counties. Examination of evidence regarding representative shipments relative to Cooper's operations between March 1, 1971, and March 31, 1972, indicates that Cooper served on an "interline" basis the city of De Kalb, Illinois, a point situated outside the limited five county area but within the radius of Cooper's authorization. Such service constituted but a small percentage of Cooper's total operations yet does indicate his willingness to serve the area in question and his intention to maintain operations there.

■■ We note, parenthetically, that dormancy has been defined as "an abandonment or termination of services the reactivation of which will result in damage either to the public interest or to intervening or protesting carriers who conducted operations during the interruption of said services." (*Arrow Transportation Co. v. United States* (D.R.I. 1969),

300 F. Supp. 813, 818.) The public policy in favor of denying transfer of "dormant" authorization is grounded in economics and the protection of intervening investments which would be hampered by the revitalization of such rights. (See *AAACON Auto Transport, Inc. v. United States* (S.D.N.Y. 1972), 345 F. Supp. 101, 107.) Consequently, where no carrier protests of harm because of a transfer of "inactive" rights, a finding of dormancy would not further this policy. In the instant case, it does not appear of record that the economic underpinnings of the policy against transfer of "inactive" authorizations would be hampered by consummation of the proposed transfer in its entirety.

Accordingly, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

PERLIN, J., concurs.

Mr. PRESIDING JUSTICE DOWNING, dissenting:

In my opinion the circuit court of Cook County was in error in reversing the Commission. Cooper and LaPorte appealed to the circuit court the Commission's order which modified Cooper's certificate in two respects, as to commodities and territory. The original certificate issued by the Commission and the authority as modified after the instant hearings follow:

*Original*

"General commodities and raw milk within a fifty (50) mile radius of 547 North Milwaukee Avenue, Libertyville, Illinois, and to transport such property to or from any point outside of such authorized area of operation for a shipper or shippers within such area."

*As modified*

"General commodities (except commodities in bulk) within Cook, Du Page, Kane, Lake and McHenry Counties, Illinois."

The applicable statute (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72) provides in pertinent part:

"The findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; and a * * * order or decision of the Commission shall not be set aside unless it clearly appears that the finding of the Commission was against the manifest weight of the evidence presented to or before the Commission for and against such * * * order or decision * * *."

Thus, before the circuit court, Cooper and LaPorte had the burden of

establishing that the order of the Commission was against the manifest weight of the evidence. There is nothing in the record presented to this court which in any way suggests how the circuit court arrived at its decision to modify the order of the Commission. Briefs were filed in the circuit court by the respective parties and are included in the record on appeal. As framed before the circuit court by Cooper and LaPorte, the issue before that court was whether Cooper had "abandoned, suspended or discontinued operations * * * so as to warrant cancellation of a portion of the authority * * *." On the other hand, the Commission styled the issue properly as whether the order was clearly against the manifest weight of the evidence. The order entered by the trial court, which is appealed here, in pertinent part reads:

"IT IS HEREBY FOUND:

1. That to the extent the transfer was approved the Court finds the decision of the administrative agency to be consistent with the law and fact;

2. That to the extent the transfer was denied, the Court finds that the administrative agency erred as a matter of law in finding that operations had been abandoned, suspended or discontinued and that decision in *Be-Mac Transport Co. v. Commission*, 30 [sic 38] Ill. 2d 154 (1967) was controlling:

THEREFORE, it is ordered:

1. That the administrative decision is reversed and that the case be remanded to the Illinois Commerce Commission for further consideration and orders consistent with the findings herein."

As I understand the order appealed from,[1] the circuit court does not even mention the statutory mandate regarding the manifest weight of the evidence. The trial court accepted and affirmed in part the findings of the Commission, but rejected other findings on the basis the Commission "erred as a matter of law."

The case of *Be-Mac Transport Co. v. Commerce Com.* (1967), 38 Ill. 2d 154, 230 N.E.2d 216, was relied on by the trial court and is cited in the majority opinion. *Be-Mac* involved a joint application to transfer a certificate of public convenience and necessity. The Commission approved the transfer of Routes 1 through 14 but held Route 15 had been abandoned and denied transfer as to it. The Winnebago County Circuit Court reversed the Commission as to Routes 6 and 9, holding these routes had been abandoned by the transferor. The only question before the supreme court was the trial court's reversal of the Commission's findings

---

[1] Although normally an order of the circuit court remanding the case to the administrative agency for further proceedings is interlocutory and not appealable, a remand under this type of order does not make it nonappealable. *Colaw v. University Civil Service Merit Board* (4th Dist. 1975), 37 Ill. App. 3d 857, 861, 341 N.E.2d 719.

as to Routes 6 and 9. After reviewing the evidence before the Commission, the supreme court said (at 158): "Based on this testimony the Commission made the statutorily required finding that the routes in question had not been abandoned, and it would seem clear that this conclusion was not against the manifest weight of the evidence." It is true the supreme court pointed out that the interlining was a large proportion of the shipments on Routes 6 and 9. The supreme court characterized "interlining" as a common practice in the trucking industry to transfer shipments to connecting carriers for delivery even though the transferor itself held authority to serve the delivery point. The fact that the interlining had occurred did not invalidate the Commission's finding. In reversing the circuit court, the supreme court held that the circuit court could properly reverse only (at 159) "if it clearly appears that the Commission's findings are against the manifest weight of the evidence * * *." See also *Chicago, Burlington & Quincy R.R. Co. v. Illinois Commerce Com.* (1965), 33 Ill. 2d 274, 277, 211 N.E.2d 279, *cert. denied* (1966), 383 U.S. 912, 15 L. Ed. 2d 667, 86 S. Ct. 890.

So far as the instant case is concerned, as I read the findings of the Commission, the interlining business was not the basis for its modification order. Rather, the Commission found that Cooper's own evidence supported its finding that Cooper had been engaged in the transportation of general commodities within Cook, Du Page, Kane, Lake, and McHenry Counties. In fact, as I review the record, it is obvious that Cooper's own testimony amply supports the Commission's finding. Therefore, it was not against the manifest weight of the evidence.

A reading of the majority opinion points out the conflicts in the evidence. In my opinion the majority disregards the "manifest weight of the evidence" mandate. I believe there is evidence to support the finding of the Commission that as to certain areas "* * * there has been an abandonment, suspension or discontinuance of service prior to the proposed transfer * * *." Thus I cannot substitute my judgment for that of the Commission (*Sunset Trails Water Co. v. Illinois Commerce Com.* (3d Dist. 1972), 7 Ill. App. 3d 449, 456, 287 N.E.2d 736), nor can I say the Commission's finding was against the manifest weight of the evidence. I would reverse the circuit court of Cook County.