KNOX MOTOR SERVICE, INC., *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.—(RAPID TRUCK LEASING, INC., *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.)

Fourth District   No. 15411

Opinion filed October 16, 1979.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and George D. Phelus and James E. Weging, Assistant Attorneys General, of counsel), for appellant.

Edward D. McNamara, Jr., of Springfield, for appellee Knox Motor Service, Inc.

Routman, Lawley and O'Hara, Ltd., of Springfield, for appellee Rapid Truck Leasing, Inc.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

This appeal is from an order of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, which held that findings made by the Illinois Commerce Commission (Commission) pursuant to section 18—309 of the Illinois motor carrier of property law (Ill. Rev. Stat. 1977, ch. 95½, par. 18—309) were improper and against the manifest weight of the evidence.

The record reveals that on September 12, 1975, the plaintiffs, Rapid Truck Leasing, Incorporated (Rapid), and Goodwine Trucking, Incorporated (Goodwine), petitioned the Commission for an order authorizing Rapid to purchase all of the outstanding shares of Goodwine pursuant to the provisions of section 18—309.

The Commission held a hearing on the petition on November 10, 1975. Knox Motor Service *et al.* (Knox) intervened in the hearing in opposition to Rapid's application. Rapid presented shipping abstracts prepared from Goodwine's bills of lading for all the shipments undertaken by Goodwine from January 1, 1974, through September 30, 1975, as evidence of the nature of the trucking service Goodwine was

actually providing. Donald Carrol, secretary of Goodwine, testified on behalf of Rapid that Goodwine's business primarily consisted of shipments of agricultural implements and machinery. However, Carrol testified that Goodwine had moved sheet steel from East Moline, Illinois, to Chicago on two occasions, and had also moved steel and iron from Rock Island, Illinois, to Moline, Illinois. Furthermore, on at least one occasion, Goodwine had moved tractors and excavating and loading or grading attachments from West Chicago to East Moline. Carrol stated that these were items of heavy equipment rather than pieces of agricultural machinery.

By an order dated May 4, 1977, the Commission granted the petition allowing Rapid to acquire the outstanding shares of stock of Goodwine. The Commission, however, also found that Goodwine had been granted a common carrier certificate by the Commission on April 16, 1969, authorizing transportation of "* * * Livestock, horses, sheep, brick, tile, canned goods, argricultural implements, machinery, and supplies, and road building equipment into or from any point or points within the State of Illinois," but was, at the time of the proposed acquisition, actually and substantially engaged in transporting "* * * Agricultural implements and repair parts for agricultural implements from points within a ten (10) mile radius of Moline, Illinois, to all points within the State of Illinois * * *." Consequently, the Commission ordered that Goodwine's 1969 certificate be cancelled and a new common carrier certificate be issued authorizing that service which the Commission determined Goodwine to be actually and substantially providing. Rapid, displeased with the modified operating authority contained in Goodwine's new certificate, which would transfer to Rapid upon acquisition, appealed the order of the Commission to the circuit court in Sangamon County.

On July 20, 1977, Rapid filed transcripts of the proceedings with the Commission pursuant to section 68 of the public utilities act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72) which requires that a party appealing from a Commission order shall furnish to the Commission either a copy of the transcript of the evidence, including exhibits, or enter into a stipulation that only certain questions are involved. Rapid furnished to the Commission only those transcripts and exhibits relating to the latest transfer of certificate 15991MC from Goodwine to Rapid in Illinois Commerce Commission Docket Number 15991MC-Sub. 8. The Commission refused to certify the transcripts and exhibits of 15991MC-Sub 8 as the record on appeal and to file these documents with the clerk of the circuit court on the ground that the document of 15991MC-Sub 8 did not constitute a complete record. The Commission took the position that the entire and proper record on appeal consisted of the transcripts and exhibits of all the sub numbers pertaining to Goodwine's Motor Carrier

Certificate 15991, those of 15991MC-Sub 1 through 15991MC-Sub 8. The Commission introduced evidence before the circuit court that it was the longstanding policy of the Commission to require the entire record to be filed in motor carrier transfer cases. The circuit court rejected the Commission's argument, holding that the transcripts and exhibits in 15991MC-Sub 8 alone constituted the complete record for administrative review.

Regarding the merits of the appeal, the circuit court entered an order on December 21, 1978, which stated:

"1. The Commission's finding, in paragraph eight (8), of said Order, that Goodwine Trucking Co. was actually and substantially engaged in the transportation of 'Agricultural implements and repair parts for agricultural implements from points within a ten (10) mile radius of Moline, Illinois, to all points within the State of Illinois,' is not a proper finding upon which to base a deletion of commodities and territory from existing authority as required in Ill. Rev. Stat. 1976, ch. 95½, par. 18—309 * * *."

The circuit court further held that the Commission order of May 4, 1977, was against the manifest weight of the evidence in that there were commodities and territory that were not abandoned, suspended, or discontinued, which the Commission failed to transfer. In addition, the circuit court ruled that Rapid need not demonstrate substantial motor carrier service of each and every commodity nor demonstrate service from and to each point of the existing authority to overcome the burden of proof of abandonment, suspension, or discontinuance of service.

On appeal, the Commission first contends that the circuit court's decision, holding that the Commission's order was based upon improper findings, was incorrect. The essence of the Commission's argument is that it made sufficient findings in its order upon which to base its decision that Goodwine had abandoned, suspended, or discontinued its authority to transport livestock, horses, sheep, bricks, tile, canned goods, agricultural supplies, and road-building equipment.

Section 18—309 of the Illinois motor carrier of property law, the statute governing the action of the Commission, provides:

"*Transfer, consolidation, merger, and acquisition of control.* 1. A certificate or permit may be transferred under the conditions specified below pursuant to such rules and regulations as the Commission may prescribe.
* * *

3. When a transaction is proposed under section [*sic*], the carrier of the person seeking authority therefor shall present an application to the Commission. The application shall contain a copy of the contract, including the terms of the proposed

transaction, and an abstract of shipments performed by the transferring party within the last year prior to the date of such contract. The Commission shall, after due notice, set the application for a public hearing to determine whether the findings specified below may properly be made. When the Commission finds that (a) the purchaser or lessee is fit, willing and able, (b) that the operations of the proposed seller or lessor have not been abandoned, suspended, discontinued, or dormant and (c) that the transaction proposed will be consistent with the public interest and the declaration of policy set forth under section 18—101, it shall enter an order approving and authorizing the transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable." (Ill. Rev. Stat. 1977, ch. 95½, par. 18—309.)

Although we have not found, nor have the parties cited, any case interpreting the relevant portions of this statute, it is clear that the language of this section requires that the Commission make certain findings. Furthermore, section 65 of the public utilities act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 69), the general statute governing proceedings before the Commission, provides that following a hearing, the Commission shall "make and render findings concerning the subject-matter and facts inquired into and enter its order based thereon."

■■ Conceding that its orders must contain findings of fact sufficient to enable a court to intelligently review them on appeal (*Chicago & West Towns Ry., Inc. v. Illinois Commerce Com.* (1947), 397 Ill. 460, 74 N.E.2d 804; *Chicago & Eastern Illinois Ry. Co. v. Commerce Com.* (1930), 341 Ill. 277, 173 N.E. 380), the Commission cites *Public Utilities Com. ex rel. City of Springfield v. Springfield Gas Co.* (1919), 291 Ill. 209, 125 N.E. 891, and *Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579, 107 N.E.2d 758, for the proposition that the Commission need only state "ultimate conclusions." However, the Commission's reliance on these latter two cases is misplaced. In both cases the court emphasizes the requirement that the Commission make such findings of fact as to enable a reviewing court to intelligently review the decision of the Commission to ascertain whether such findings offer a reasonable basis for the order entered. Secondly, the question here presented is not the specificity of the required findings, but rather whether such findings were made in the first instance.

■■ In *Cooper v. Illinois Commerce Com.* (1977), 49 Ill. App. 3d 398, 364 N.E.2d 396, the appellate court stated:

"Dormancy has been defined as 'an abandonment or termination of services the reactivation of which will result in damage either to

the public interest or to intervening or protesting carriers who conducted operations during the interruption of said services.'

\* \* \*

To be sure, dormant services should not be reinstated without a showing of public need. Those opposing such a transaction must establish with some particularity the extent to which their operations might be harmed by approval of the application." (49 Ill. App. 3d 398, 402, 364 N.E.2d 396, 399.) We find no discussion in the Commission's order as to the abandonment of any territory or any commodities or of any injury to either the public or the intervening parties which would result from the transfer of this authority. Furthermore, we are not persuaded by the Commission's argument that since its order was worded in an affirmative manner so as to state that part of the operating authority originally granted was being "actually and substantially used," it is necessarily implied that there was a finding of abandonment of those commodities and territory excluded in the modified certificate. Clearly, authority which is not being "actually and substantially used" is not synonymous with "authority which has been abandoned, suspended or discontinued." Moreover, in *Be-Mac Transport Co. v. Illinois Commerce Com.* (1967), 38 Ill. 2d 154, 159, 230 N.E.2d 216, 219, the supreme court stated that "a carrier need not show service to all points on all routes in order to avoid a finding of abandonment." We must concur with the circuit court's determination that the Commission's order failed to set forth sufficient findings of fact upon which to base the deletion of commodities and territory from Goodwine's authority as required by section 18—309 of the Illinois motor carrier of property law.

Since we hold that the Commission's order did not make sufficient findings to allow judicial review of the issues, we necessarily cannot reach the question of whether the Commission's decision was against the manifest weight of the evidence. We note that "[i]t is not for us in the first instance to weigh the evidence and reach a conclusion; that is for the Commission to do [citations], and we cannot review findings where in fact the essential findings have not been made." (*Baltimore & Ohio Chicago Terminal R.R. Co. v. Illinois Commerce Com.* (1977), 55 Ill. App. 3d 915, 920, 370 N.E.2d 1266, 1270.) (See *Brinker Trucking Co. v. Illinois Commerce Com.* (1960), 19 Ill. 2d 354, 357-58, 166 N.E.2d 18, 19-20; *Illinois Commerce Com. v. New York Central R.R. Co.* (1947), 398 Ill. 11, 15-16, 75 N..E.2d 411, 414; *Camelot Utilities Inc. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 5, 9-10, 365 N.E.2d 312, 315.) For this reason, the cause must be remanded for further proceedings before the Commission.

The Commission lastly contends that the proper record on appeal in

the circuit court should have consisted of transcripts of all proceedings under certificate 15991MC, as opposed to merely the last application for transfer of the certificate (15991MC-Sub 8). Although not clear from the record or from the briefs of the parties, it appears that various proceedings were held by the Commission pertaining to certificate 15991MC from 1969, the time of the original grant of authority, until the date of the proceeding in question. Each proceeding was apparently classified by the certificate designation 15991MC with an additional sub number. The petition of acquisition in this cause constituted sub number 8.

■■ Section 65 of the Illinois public utilities act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 69) controls the contents of the record on appeal from a decision of the Commission. Section 65 of the act provides in part:

> "In case of an appeal from any order or decision of the Commission, under the terms of sections 68 and 69 of this Act, a transcript of such testimony, together with all exhibits or copies thereof introduced and all information secured by the Commission on its own initiative and considered by it in rendering its order or decision (and required by this Act to be made a part of its records) and of the pleadings, records and proceedings in this case, shall constitute the record of the Commission: * * *."

Section 60 of the act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 64) further provides in part:

> "All evidence presented at hearings held by the Commission or under its authority shall become a part of the records of the Commission. In all cases in which the Commission bases any action on reports of investigation or inquiries not conducted as hearings, such reports shall be made a part of the records of the Commission."

On several occasions, the supreme court has emphasized the requirement of section 65 of the act that any evidence considered by the Commission in rendering a decision must be made a part of the record. In *Atchison, Topeka & Santa Fe Ry. Co. v. Commerce Com.* (1929), 335 Ill. 624, 167 N.E. 831, the supreme court stated:

> "The Commissioners cannot act on their own information. Their findings must be based on evidence presented in the case, with an opportunity to all parties to know of the evidence to be submitted or considered, to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal, and nothing can be treated as evidence which is not introduced as such." (335 Ill. 624, 638-39, 167 N.E. 831, 837.)

In *Pullman Co. v. Illinois Commerce Com.* (1945), 390 Ill. 40, 60 N.E.2d 232, the supreme court again stated:

"The Commissions's order must be based upon evidence presented at the hearing. Facts conceivably known to the Commission but not put in evidence will not support an order. (*Rockwell Lime Co. v. Commerce Commission*, 373 Ill. 309, 26 N.E.2d 99.) We recur to our observations in *Fleming v. Commerce Commission*, 388 Ill. 138, 57 N.E.2d 384, that a hearing before the Commission is not a partisan hearing with the Commission on one side arrayed against the utility on the other, but that it is, instead, an administrative investigation instituted for the purpose of ascertaining and making findings of fact. Here, the Commission's action in basing its final order upon the question of notice to a Federal agency, a matter upon which no evidence was presented and which the Commission itself, for the first time, raised in its final order, was arbitrary and capricious in the extreme." 390 Ill. 40, 46, 60 N.E.2d 232, 235.

■■ We do not wish to imply in the instant case that the Commission may not take cognizance of facts adduced at prior hearings. We do, however, find that the Commission may do so only when such facts are introduced as evidence at a hearing where all parties have an opportunity to be heard. Rapid was not a party to any prior proceeding under certificate 15991 and had no opportunity to refute any evidence presented concerning prior sub numbers. Consequently, we conclude that the circuit court properly determined that the record on appeal in this cause consists of only those transcripts and exhibits from the hearing designated as 15991-Sub 8 in which Rapid participated.

Accordingly, the judgment of the circuit court is affirmed insofar as its determination that the Commission made insufficient findings of fact upon which to base its order and insofar as its determination of the contents of the record on appeal. The judgment of the circuit court is reversed as to its determination that the Commission's decision is against the manifest weight of the evidence. The cause is remanded to the Commission for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded with directions.

MILLS and TRAPP, JJ., concur.