(No. 40458.—

Be-Mac Transport Company, Inc. *et al.,* Appellees, *vs.* Illinois Commerce Commission *et al.,* Appellants.

*Opinion filed September 29, 1967.*

WILLIAM G. CLARK, Attorney General, of Springfield, (EDWARD G. FINNEGAN, Assistant Attorney General, of counsel,) for appellant Illinois Commerce Commission.

DAVID AXELROD and ROBERT H. MILLER, both of Chicago, (AXELROD, GOODMAN & STEINER, of counsel,) for apellants Rock Island Transfer & Storage Company and Michigan Express, Inc.

PEDDERSON, MENZIMER, CONDE & STONER, of Rockford, for appellees.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court: .

Rock Island Transfer and Storage Company (hereafter Rock Island) and Michigan Express, Inc., are common carriers by motor vehicle of property. They jointly applied to the Illinois Commerce Commission for authority to transfer Rock Island's certificate of public convenience and necessity as a common carrier to Michigan Express. Appellees, who are apparently competing carriers, intervened in the hearing before the Commission but offered no evidence in opposition. The Commission approved the transfer of Routes 1 through 14, but held Route 15 had been abandoned and denied transfer as to it. Appellees appealed to the Winnebago County circuit court which reversed the Commission's order as to Routes 6 and 9 holding that those routes had also been abandoned by Rock Island. Michigan Express, Rock Island and the Commission seek reversal of that judgment.

The governing statutes are section 13(c) of the Motor Carrier of Property Act (Ill. Rev. Stat. 1965, chap. 95½, par. 282.13) and section 68 of the Public Utilities Act. (Ill. Rev. Stat. 1965, chap. 111⅔, par. 72.) Section 13(c) provides: "Whenever a transfer  *  *  *  is proposed under this Section, the carrier or carriers or the person seeking authority therefor shall present an application to the Commission, and thereupon, the Commission shall, after due notice, set the application down for a public hearing in order to determine whether the findings specified below may properly be made. If the Commission finds that (1) the proposed purchaser or lessee is fit, willing and able, (2) that that proposed seller or lessor has not abandoned, suspended, or discontinued operations, and (3) that the transaction proposed will be consistent with the public interest and the policy declared in this Act and that the conditions of this Section have been or will be fulfilled, it shall enter an order approving and authorizing such transfer  *  *  *  upon such terms and conditions as it finds to be just and reasonable."

Section 68 provides: "The findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; and a rule, regulation, order or decision of the Commission shall not be set aside unless it clearly appears that the finding of the Commission was against the manifest weight of the evidence presented to or before the Commission for and against such rule, regulation, order or decision, or that the same was without the jurisdiction of the Commission."

Since the only question before us relates to the propriety of the trial court's reversal of the Commission's findings as to Routes 6 and 9, we review only the evidence pertinent thereto. Rock Island has operated as a common carrier of property by motor vehicle in Illinois intrastate commerce since 1917. Its certificate authorized transportation over specified routes, and as to Routes 6 and 9 provided as fol-

lows: "Route No. 6. From Dixon, Illinois, to Chicago, Illinois, and return via Illinois Highway 2 to Rockford and thence over U.S. Highway 20 to Chicago, Illinois, serving Belvidere, Byron, Bloomington, Camp Grant, Elgin, Grand Detour, Harmony, Henpock, Oregon, Rockford, Stark and Marengo, Illinois, as intermediate points and Barrington, Bartlett, Carpentersville, Dundee, Huntley, Palatine and Udina, Illinois, as off-route cities and points. Route No. 9. From Rockford, Illinois, to Mendota, Illinois and return via U.S. Highway 51 to Mendota, Illinois, serving Compton, Illinois, as intermediate points and West Brooklyn, Illinois, as off-route cities and points."

Charles Burke, Rock Island's vice-president, testified that his company maintained terminals at Chicago, Dixon and Rock Island and call stations at Mendota, Sterling and Rock Falls, operated 35 tractors and 47 trailers and employed approximately 70 persons. Some 33⅓-35% of their 5000 monthly shipments were in Illinois intrastate commerce. He further testified that Rock Island has held out service to all of the points authorized by its Illinois certificate on a daily basis ever since it has been in the trucking business. Exhibit 12, introduced in evidence before the Commission, was a printed "point list" circulated by Rock Island for advertising purposes. It included representative municipalities served by Rock Island and named some from both Routes 6 and 9. This witness also testified that it was a common practice in the trucking industry to transfer shipments to connecting carriers for delivery even though the transferor itself held authority to serve the delivery point. This practice is called "interlining" and is done when the volume of business is such that it is unprofitable to send the transferor's own truck to the delivery point.

Exhibits 10, 11 and 13 are traffic studies of shipments handled by Rock Island during portions of 1964 and 1965, the years in which the circuit court found there to have been an abandonment of Routes 6 and 9. Exhibit 10 shows

shipments on these routes from Chicago, Dixon, Mendota, Palatine and Rockford and shipments to Bloomington, Chicago, Dixon, Mendota and Rockford. Exhibit 11 shows shipments involving Carpentersville, Dixon, Mendota and Rockford, one of which originated at Rockford destined for Dixon, both cities being on Route 6. Exhibit 13 (showing joint-line shipments with other carriers) shows shipments involving the following points on Routes 6 and 9: Barrington, Belvidere, Carpentersville, Dixon, Elgin, Marengo, Mendota, Oregon and Rockford, including a number of shipments where both the origin and destination are on the routes in question. These exhibits, when considered with exhibit 12, establish that Rock Island advertised service to or served 14 of the 21 points on Route 6 and 2 of the 4 points on Route 9.

Based on this testimony the Commission made the statutorily required finding that the routes in question had not been abandoned, and it would seem clear that this conclusion was not against the manifest weight of the evidence. Appellees urge, however, that the evidence indicates a quite large proportion of the shipments on Routes 6 and 9 were handled by "interlining", and that witness Burke's acknowledgement that Rock Island had not operated over Highway 2 to Rockford "in the last couple of years" and was not actively soliciting business "to these points" or those on Route 9 constituted an admission that Rock Island had abandoned both Routes 6 and 9, and that there is no evidence indicating a need for resumption of its operations on these routes. In support of its argument it cites numerous Interstate Commerce Commission decisions. While appellants have also cited such decisions, they point out, and appellees concede, these decisions are not binding on the Illinois Commerce Commission. We have, however, examined each of them and find them distinguishable, in varying degrees, from the situation before us. They are, generally speaking, relevant in that several affirm the rule that dor-

mant services should not be reinstituted without a showing of need (*Kings Van & Storage, Inc. - Purchase - Millard,* 75 M.C.C. 582 and 85 M.C.C. 110; *Roy Barsh - Control - Shippers Service, Inc.,* 75 M.C.C. 267; *C. I. Whitten Transfer - Purchase - Thomas L. Seishman,* 75 M.C.C. 562), that the burden is upon the applicant (appellants) to establish that allowance of the proposed transfer will be in the public interest (*Ashworth Transfer, Inc. - Purchase - W. L. Willcoxon & E. J. Fowkes -* 80 M.C.C. 395; *New Dixie Lines, Inc. - Control - Jocie Motor Lines, Inc.,* 75 M.C.C. 659, 668), that those opposing transfer (appellees) must establish with some particularity the extent to which their operations would be harmed by approval of the application (*Dixie, Pacific Freight Lines - Lease and Purchase - Hurlbut and Keyes,* 55 M.C.C. 612; *Palmer Lines, Inc. - Control and Merger-Moody Transportation Co.,* 87 M.C.C. 160), and that a carrier need not show service to all points on all routes in order to avoid a finding of abandonment. *Ashworth.*

Since the Commission found the proposed transfer to be in the public interest and that Rock Island "has actually and substantially been engaged in the transportation of: Commodities generally over the following described routes: [Routes 1-14]," and "that the evidence shows that there is a continuing need for the services of transferee to transport the commodities in the territory or over the routes as shown in Finding No. 8 [Routes 1-14]," the circuit court might properly reverse these findings only if "it clearly appears that the Commission's findings are against the manifest weight of the evidence, or that the Commission lacked jurisdiction to enter the order * * *." *Chicago, Burlington & Quincy Railroad Co.* v. *Commerce Com.,* 33 Ill.2d 274, 277, and cases there cited.

Inasmuch as appellees offered no evidence, there is in this record nothing to indicate the quality or quantity of motor carrier service, other than that offered by Rock

Island, available to the communities on Routes 6 and 9; nor, were the Illinois Commerce Commission disposed to follow the Federal commission's rule imposing upon appellees the burden of establishing the extent of any adverse effect upon them, is there any proof upon this latter subject. Appellees' position seems to be that the primary responsibility for showing a need for appellant's services rested on appellant and that, absent such a showing the transfer could not be approved. Such might well be the case had appellants been found to have abandoned Routes 6 and 9, but the converse is true where the evidence establishes a sufficient basis for the Commission's finding that abandonment has not occurred. Rock Island held a certificate of public convenience and necessity and was not required, as erroneously thought by the circuit judge, to establish that it was "necessary and expedient that he be permitted to operate." This would equate the showing necessary to secure approval of a transfer of an existing certificate with that required to secure the certificate initially, a result clearly not intended by section 13(c) regarding transfer which requires only a showing that "the transaction proposed will be consistent with the public interest", as contrasted to section 5 governing applications for new certificates which does require a showing of "public convenience and necessity".

While Rock Island concededly did not furnish direct service with its own trucks to each of the points on Routes 6 and 9, it is equally clear that it did advertise and provide service to points on both routes within the period in question. That such service may have been provided by "interlining" with other motor carriers does not, in our judgment, invalidate the finding that the service was furnished by Rock Island. We accordingly hold that there is in this record an adequate basis for the Commission's conclusions. The order of the Commission approving the transfer of Routes 1-14 was not contrary to the manifest weight of the evi-

dence, and the circuit court was in error in so holding as to Routes 6 and 9.

The judgment of the circuit court of Winnebago County is therefore reversed.

*Judgment reversed.*