344

ARTIM TRANSPORTATION, INC., *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.—ROGER E. KAHLER *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.

Fourth District   No. 16507

Opinion filed February 18, 1981.

Robert T. Lawley, of Routman, Lawley & O'Hara, Ltd., of Springfield, for appellant Roger E. Kahler.

Edward D. McNamara, of Springfield, for appellant Artim Transportation, Inc.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules Bolos, Special Assistant Attorney General, and Ronald L. Drozdzik and Anita S. Johnson, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Sangamon County which affirmed an order of the Illinois Commerce Commission (Commission).

Before proceeding into the facts, issues and merits of the appeal, we think it necessary to pause to describe the status of the parties before the Commission, the circuit court and this court, since the caption of the cause here may generate some confusion. Roger Kahler, appellant here, filed his application with the Commission. In the course of the proceedings the Artim Transportation, Inc., and others were permitted to intervene. The decision of the Commission was adverse to Kahler, and he appealed to the circuit court of Sangamon County in an effort to reverse the Commission. Artim *et al.* also appealed to the circuit court pursuant to section 68 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72). However, their effort, even though designated as appellants, was to sustain the order of the Commission. On motion, the circuit court consolidated the two appeals in that court. Both Kahler and the intervenors have appealed to this court, Kahler in an effort to reverse the Commission's order, the intervenors in an effort to sustain it. Although both sets of parties are designated as appellants, by motion made and allowed in this court, Artim's brief was allowed to stand as that of an appellee. The standing of the parties, here, then, is that of appellant as to Kahler, appellee as to Artim *et al.*, and the Commission.

On October 24, 1972, Roger Kahler filed an application with the Motor Carrier Division of the Commission for approval of his acquisition and control of the Fort Transfer Company by means of his purchase of all outstanding shares of its common stock. This was done pursuant to the provisions of section 18—309 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 18—309) (Code), which reads in pertinent part as follows:

"(a) Any certificate or permit may be transferred under the conditions specified below pursuant to such rules and regulations as the Commission may prescribe after notice, application and hearing thereon.

(b) It is lawful, under the conditions specified below, but under no other conditions, * * *; for a person not a motor carrier of property, to acquire control of one or more motor carriers of property through ownership of their stock, * * *.

(c) Whenever a * * * acquisition of control is proposed under this Section, * * * the person seeking authority therefor shall present an application to the Commission, and thereupon, the Commission shall, after due notice, set the application down for a public hearing in order to determine whether the findings specified below may properly be made. If the Commission finds that (1) the proposed purchaser * * * is fit, willing and able, (2) that the proposed seller * * * has not abandoned, suspended, or discontinued operations, and (3) that the transaction proposed will be consistent with the public interest and the policy declared in this Chapter and that the conditions of this Section have been or will be fulfilled, it shall enter an order approving and authorizing such * * * acquisition of control, upon such terms and conditions as it finds to be just and reasonable. * * *

(d) It is unlawful for any person, except as provided in paragraphs (b) and (c) to accomplish or effectuate or to participate in accomplishing or effectuating the control or management in a common interest of any 2 or more carriers of property, * * * and one or more carriers other than motor carriers of property, however such result is attained, whether directly or indirectly, by use of common directors, officers, or stockholders, a holding or investment company or companies, a voting trust or trusts, or in any other manner whatsoever. It is unlawful to continue to maintain control or management accomplished or effectuated after the enactment of this Chapter and in violation of this paragraph. As used in this paragraph, the words 'control or management' shall be construed to include the power to exercise control or management."

Unless otherwise specifically indicated, all references in this opinion will be to the 1973 version of the Code, since the hearings were conducted on May 30, 1973, and August 17, 1973, and the case was marked heard and taken by the Commission on the latter date. The order of the Commission was not entered until April 21, 1976, some 32 months later. The statute was amended in 1977, and again in 1980.

At the first hearing on May 30, 1973, George Fort, the majority stockholder and president of Fort Transfer Co., was the only witness. Evidence developed as follows: There were 60 shares of stock authorized and outstanding of which George Fort owned 44, his son Lloyd Fort one, and Roger Kahler 15. Lloyd was secretary of the corporation, and Kahler was vice-president, and also designated as manager. Kahler was hired by George Fort in 1967 to assist in running the business, and Fort sold him the 15 shares in the same year as an incentive. Fort claimed that he was still active in the business, although he was 78 years old and had not driven a truck for several years preceding the hearing. The exhibits showed that Fort Transfer Co. had broad authority to Transport commodities general. Several letters soliciting business were identified as having been written by Kahler, and Fort testified that this was done since he, Kahler, had a better education and could write a better letter.

As will be dealt with later, one of the principal issues in controversy is whether George Fort and Roger Kahler had an oral agreement in 1967 at the time of hiring, the substance of which was that Kahler would be permitted to purchase the business. In his testimony, Fort denied any such agreement and stated that he had decided to sell to Kahler only a year or so prior to the hearing, and only if he could obtain Commission approval.

On cross-examination, Fort testified that his company leased space from Ervin Kahler, Inc. (Kahler, Inc.). This corporation was partially owned by Ervin Kahler, who is Roger Kahler's father, but Fort denied that Roger had any connection with it. He also testified that Fort Transfer Co. used principally leased trucks and leased drivers in its business. It had only one full-time driver of its own. Under further cross-examination, Fort demonstrated little knowledge of the financial or operative aspects of the business. However, he again denied any sort of written or oral agreement with Roger Kahler for the sale of the business.

The hearing was then continued until August 17, 1973, at which time Roger Kahler was a principal witness. His testimony largely paralleled that of George Fort. He specifically denied having any agreement about the purchase of the business until shortly before seeking Commission approval. He stated that Fort Transfer Co. leased space and equipment from Kahler, Inc., in which Ervin Kahler, his father, was a minority stockholder. He denied any other connection between Fort Transfer Co. and Kahler, Inc. He stated that shortly after he started with Fort, farmers in the area were beginning to use bulk fertilizer and were calling upon Fort Transfer Co. to haul it. Since Fort Transfer Co. had the authority, it started leasing more equipment in order not to put its authority in jeopardy. It then began soliciting more business to avoid having idle leased equipment. He stated that Fort Transfer Co. leases from others

than Kahler, Inc., and all leases with Kahler, Inc., have been filed with, and approved by, the Commission.

Ervin Kahler, father of Roger, and minority shareholder in Kahler, Inc., also testified at this hearing. He denied any connection between Kahler, Inc., and Fort Transfer Co., other than the leasing of terminal space and the leasing of trucks and drivers to the latter. On cross-examination he stated that of the gross revenue generated by Fort Transfer Co., on leased equipment and drivers, 90% is paid over to Kahler, Inc., and 10% retained by Fort. Out of the 90%, Kahler, Inc., pays all of the expense of operation. He further stated: "Because of their authority (i.e., Fort's) we operate under their authority, Kahler's authority doesn't take care of all this commodities. * * * About the only thing on our authority we can transport as our own, is construction work."

He declined to state who owned the rest of the stock in Kahler, Inc., but stated that it was no one connected with Fort Transfer Co. It was his testimony further that it was customary in the business to supply the driver when leasing trucks.

Several intervenors presented testimony as to the extent of their operations, and upon offers of proof their representatives claimed that they could perceive economic detriment to their companies if the proposed sale were approved.

Almost three years later, on April 21, 1976, the Commission issued its order. After the customary jurisdictional recitals and a summary of the evidence, the order made the following finding which is the critical one in this case:

"(7) Section 18—309 of the Law provides that the Commission shall enter an Order approving an Acquisition of Control if the Commission finds that (1) the proposed purchaser or lessee is fit, willing and able, (2) that the proposed seller or lessor has not abandoned, suspended, or discontinued operations, and (3) that the transaction proposed will be consistent with the public interest and the policy declared in this Chapter and that the conditions of this Section have been or will be fulfilled. Section 18—309 also provides that Commission approval be secured and the same findings be made before any party leases or contracts to operate an authority. The evidence and testimony set forth in Finding No. 6 hereinabove indicates that Roger Kahler entered into an oral contract in 1967 to operate the authority of Fort. Said evidence and testimony also indicates that Ervin Kahler, Inc. has, for some time, been leasing the authority of Fort. At no time did this Commission authorize any lease of or contract to operate the authority of Fort. The Findings required by Section 18—309 cannot be made in this

case, and the application for Acquisition of Control should be denied."

The Commission's order then denied Roger Kahler's application; appeal to the circuit court of Sangamon County resulted in affirmance of the order; and the appeal to this court ensued.

The issues presented for review may be divided into two principal categories: (1) The manifest weight of the evidence, and (2) statutory interpretation. The evidentiary issues stem from the Commission's negative statement that it could not make the findings required by section 18—309 of the Code.

■■ The first of these findings is that the purchaser be "fit, willing and able." The Commission apparently felt unable to make such a finding because of its factual finding that Roger Kahler had entered into an oral contract in 1967 to purchase Fort Transfer Co. The second finding is that the proposed seller "has not abandoned, suspended, or discontinued operations." Here it appears that the Commission felt unable because of its factual finding that Kahler, Inc., had been leasing the authority of Fort Transfer Co. The third finding, *viz.*, public interest, went unmentioned in the order. However, if the Commission determines that any one of the three findings is not established, it may deny an application. *Carta-Back, Inc. v. Commerce Com.* (1978), 64 Ill. App. 3d 370, 381 N.E.2d 32.

We are aware of the statutory mandate that upon review all findings and conclusions of the Commission are held to be *prima facie* true (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72); we are also aware of the many supreme court decisions which have held that a decision of the Commission is entitled to great weight and may not be set aside unless clearly contrary to the manifest weight of the evidence, or unless the Commission was without jurisdiction. (*Village of Apple River v. Commerce Com.* (1960), 18 Ill. 2d 518, 165 N.E.2d 329.) However, under the evidence presented in this case, we find that the Commission was manifestly in error and that its decision must be reversed.

First, as to the purported contract of sale in 1967, both parties, George Fort and Roger Kahler, categorically denied its existence, and no evidence of any sort was introduced to refute or rebut those denials. The Commission argues on appeal that the Fort Transfer Co. had reached such a low ebb that it had abandoned its authority, and that George Fort and Roger Kahler entered into a secret agreement to build it back up to the point where such a finding could not stand when an application to purchase might be made. Such a theory is based solely upon speculation and conjecture.

George Fort testified that he was daily upon the premises and no major decisions were made without his approval. He remained as presi-

dent and majority shareholder. His ability to recall details of day-to-day operations was inexact, but not substantially different from any other 78-year-old man who has employed a manager to attend to them.

Undoubtedly Roger Kahler built up and rescued what appeared to be a moribund business, but this is part of the policy of the Code. Section 18—301(d) (Ill. Rev. Stat. 1973, ch. 95½, par. 18—301(d)) first provides for the issuance of certificates, and then states:

"* * * provided, however, that no terms, conditions or limitations shall restrict the right of the carrier to substitute or add to his or its equipment and facilities over the routes, between the termini or within the territory authorized in the certificate, as the development of the business and the demands of the public shall require."

We interpret this as a legislative mandate that development of business is to be encouraged, not that the seacocks should be opened on a sinking ship.

■■ The Commission's finding of the existence of an oral contract in 1967 is clearly against the manifest weight of the evidence.

The finding of the leasing of authority by Fort Transfer Co. to Kahler, Inc., and the consequent finding of inability to determine "not abandoned" is likewise seriously flawed. To support this, a familial relationship between Roger Kahler and the minority shareholder in lessor, Kahler, Inc., did exist, but there was also a categorial denial of anything else. As with the denial of the oral contract by the purported parties thereto, there was no evidence to refute or rebut it.

What appears to trouble the Commission most greatly is the conclusory statement of Ervin Kahler, quoted above, and the 90%-10% division of revenues. The statement amounts to nothing more than Kahler's opinion, and consumes less than three lines in a 280-page transcript.

The Commission has not cited to us, nor have our own researches revealed, any case wherein the 90%-10% arrangement has been held improper. Furthermore, there was no evidence in this record as to whether such an arrangement was ordinary or extraordinary.

An analogous situation was presented in *Carta-Back, Inc. v. Commerce Com.* (1978), 64 Ill. App. 3d 370, 381 N.E.2d 32. In that case, *Carta-Back* was lessee of equipment and personnel from another and the Commission found that it did not then have "direct and complete" control of its operations. The *Carta-Back* court in connection with this aspect said:

"* * * The United States Supreme Court, the Illinois Supreme Court and the Interstate Commerce Commission have all held that carriers which use the equipment and employees of other parties and which cede some control over their operations to these parties

may still be regarded as the carriers providing the service to the public. [Citations.]

These three decisions demonstrate that the test to determine whether a carrier is providing service to the public depends on whether that carrier has assumed in significant measure the characteristic burdens of a transportation business. This test involves an examination of the entire structure of the operations and a determination seldom can rest upon one factor alone. While the degree of direct control a carrier exercises over day-to-day operations is one factor, it is not the sole factor; and even though a carrier has ceded some control over its operations, it has not necessarily yielded overall control of these operations. An important consideration is the degree to which a party has assumed the financial risks of the operations." 64 Ill. App. 3d 370, 374-75, 381 N.E.2d 32.

There was extensive evidence in *Carta-Back* of the entire operation, which is lacking here, and the court looked to such factors as the lessee company collecting the bills and soliciting the business, of which there is evidence here. In fairness, it must be said that *Carta-Back* was decided subsequently to the Commission's decision in the instant case.

Another analogous situation was presented in *Be-Mac Transportation Co. v. Commerce Com.* (1967), 38 Ill. 2d 154, 230 N.E.2d 216. In *Be-Mac*, the practice of "interlining" was examined. Under this practice, one carrier delivers its load to a connecting carrier for delivery even though the transferor has authority to serve the delivery point. The supreme court affirmed the Commission's order which found that the transferor had not abandoned its authority by interlining.

■■ Since there was no examination of the overall operation of Fort Transfer Co., and since the factor of the 90%-10% division standing alone is neutral, the finding that Fort had leased its authority to Kahler, Inc., was against the manifest weight of the evidence and must fall together with the consequent negative finding regarding abandonment.

In addition to the evidentiary issues just discussed, Roger Kahler makes an argument on statutory construction. In brief, his contention is that since subparagraph (d) of section 18—309 of the Code cited above refers to "any 2 or more carriers," the statute is not applicable since he was attempting to purchase only one carrier. He also points out that this provision was amended in 1977, after these proceedings before the Commission, to apply to one carrier. Additionally, he argues that the reference in the 1973 statute in subparagraph (d) to two carriers conflicts with the reference to one carrier in subparagraph (b), and therefore the entire statute is so vague as to be unconstitutional.

Whatever the merits of the argument may be, we do not feel called

upon to resolve them, since the order of the Commission must be reversed as being against the manifest weight of the evidence.

For the foregoing reasons, we hold that the Commission's order of April 21, 1976, is against the manifest weight of the evidence and the order of the circuit court of Sangamon County affirming it is reversed.

Reversed.

MILLS and GREEN, JJ., concur.