JENKINS TRUCK LINE, INC., *et al.*, Plaintiffs-Appellants, *v.* THE ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.

Fourth District    No. 16701

Opinion filed May 29, 1981.—Modified on denial of rehearing July 2, 1981.

Routman, Lawley & O'Hara, Ltd., of Springfield, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and Thomas J. Russell, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

The Illinois Commerce Commission found a partial abandonment.

It was partially correct and partially wrong. And its order was arcane.

We remand.

Previous to December 8, 1975, Larry Fenner Transport, Inc. (Fenner), operated under a common carrier certificate authorizing the following transportation service:

> "Machinery, machinery parts, agricultural implements, farm machinery and farm tractors between all points in the State of Illinois; also, iron and steel products and building materials within a Fifty (50) mile radius of Silvis, Illinois, and to all points and places in Illinois for a shipper or shippers within a Fifty (50) mile radius of Silvis, Illinois. RESTRICTED against the transportation of cement."

On that date Fenner, along with Jenkins Truck Line, Inc. (Jenkins), petitioned the Illinois Commerce Commission (Commission) for authorization for Jenkins to acquire control of Fenner's operating authority by purchasing all of Fenner's capital stock. Three other common carriers intervened in this proceeding, contending that Fenner had abandoned all or part of its operating authority. These intervenors withdrew, however, when Fenner and Jenkins agreed that a certain restriction—not at issue here—would be placed upon the operating authority transferred to Jenkins.

Following a hearing, the Commission entered an order in which it found:

> "* * * that the operations of Fenner Transport were not abandoned, suspended, discontinued or dormant to the following extent:
>
>> Machinery, machinery parts and agricultural implements between points lying north of U.S. Highway 36, on the one hand, and all points within the State of Illinois on the other; building materials (except cement) and steel articles within a fifty (50) mile radius of Silvis, Illinois."

The Commission made this finding pursuant to section 18—309(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 18—309(c)). That section requires the Commission to hold a hearing whenever application is made for transfer of a common carrier certificate.

> "If the Commission finds that (1) the proposed purchaser or lessee is fit, willing and able, (2) that the proposed seller or lessor has not abandoned, suspended, or discontinued operations, and (3) that the transaction proposed will be consistent with the public interest and the policy declared in this Chapter and that the conditions of this Section have been or will be fulfilled, it shall enter an order approving and authorizing such transfer, * * * upon such terms and conditions as it finds to be just and reasonable."

Jenkins and Fenner appealed the Commission's finding to the circuit court, which in turn affirmed the order. This appeal concerns the propriety of the Commission's decision under section 18—309(c)(2), that a

portion of Fenner's operating authority had become "abandoned, suspended, or discontinued."

Under its original operating authority, Fenner could transport the named commodities between any two points in the State of Illinois. Under the authority that the Commission has approved for transfer, however, Jenkins would be unable to make shipments between two points south of Route 36—although it could make shipments into and out of that area.

At the hearing, Jenkins and Fenner put into evidence abstracts of almost 600 shipments made during an 11-month period prior to the application for transfer of Fenner's certificate. According to testimony by Larry Fenner, these abstracts represented approximately 70% of the shipments actually made during that time. Each abstract indicates the shipment's date, point of origin, point of destination, commodities hauled, and weight. Although a number of cities south of Route 36 are listed as points of either origin or destination, no abstract shows a shipment both beginning and ending in such cities. At the hearing, however, Larry Fenner testified that the cities listed on the abstracts were not the only places where stops were made. For instance, he described a Chicago-to-Jonesboro shipment which included stops at Clifton, Pontiac, Fairbury, Alorton, St. Peter, Wayne City, and Belleville. The latter three communities, as well as Jonesboro, are south of Route 36. (Apparently these intermediate stops were made only for the purpose of dropping off equipment.)

The threshold question in this case is whether the operating authority which the Commission has approved for transfer would allow Jenkins to make the kind of shipment just described. Jenkins and Fenner have presumed that the Commission's order proscribes such shipments; nothing the Commission's attorney said at oral argument would indicate otherwise. We are somewhat perplexed by the question of whether these intermediate stops would constitute shipments "between points" south of Route 36. The order is somewhat ambiguous and could be interpreted as either allowing or prohibiting these shipments. Had the Commission's order said that the transferred authority was limited to shipments with either a point of origin or a point of destination north of Route 36, then multi-stop shipments would obviously have been allowed. However, the Commission chose to use the language "between points," leading us to the conclusion that it was not referring just to points of origin and destination. When a truck drops off its penultimate tractor at Belleville, the final tractor is, in essence, being shipped "between" Belleville and Jonesboro.

■■ Having thus construed the Commission's language, we turn to the question of whether the trial court was correct in holding that the order was supported by the manifest weight of the evidence. Jenkins and

Fenner would have us reverse the trial court because Fenner had not abandoned service to the area south of Route 36. For Jenkins and Fenner to avoid the Commission's finding of abandonment, however, they had the burden of presenting the Commission with "affirmative evidence of continued operation." (*Hamilton v. Illinois Commerce Com.* (1970), 47 Ill. 2d 264, 266, 265 N.E.2d 156, 157.) There was no documentary or testimonial evidence showing that Fenner had both begun and ended any shipment south of Route 36. Further, there was no evidence that Fenner had an established tariff for such shipments or that it actively solicited such shipments. Thus, the Commission had no choice but to find that Fenner had abandoned its authority to make a shipment that would both begin and end south of Route 36. In a way of speaking, of course, Fenner did "serve" the area south of Route 36. However, Fenner did not provide a kind of service which Jenkins will be prevented from providing under the transferred authority. Thus, insofar as the Commission's order prohibits shipments having neither a point of origin nor a point of destination north of Route 36, the order is supported by the manifest weight of the evidence. *Hamilton.*

But the order was against the manifest weight of the evidence to the extent that it found that Fenner had abandoned its authority to make shipments with multiple stops south of Route 36. Larry Fenner testified concerning at least three of the abstracted shipments which had in-transit stops south of Route 36. He also testified that "a lot" of Fenner's shipments involved stops in transit. Thus, there was ample evidence to show that Fenner had maintained this kind of service.

Section 18—309(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 18—309(c)) allows the Commission to approve transfers of operating authority "upon such terms and conditions as it finds to be just and reasonable." It is apparently Jenkins' and Fenner's position that the Commission's order was unreasonable in finding abandonment as to such a narrow slice of Fenner's original operating authority and that it therefore should be reversed in total. They argue that they could not foresee that the Commission would carve up the operating authority in this way.

The Commission has trod into dangerous territory, for it certainly could go too far along the path it has taken here. If, for example, the instant order had found an abandonment as to an area bounded by a winding, obscure roadway, then it would surely be unreasonable. The location of Route 36, however, is undoubtedly familiar to virtually every common carrier in the State and roughly bisects Illinois from east to west. Thus, the Commission's use of Route 36 as a boundary line was not unreasonable.

Jenkins and Fenner also contend that the Commission could not delete the abandoned territory from Fenner's operating authority absent a

showing in the record that reactivation of the abandoned authority would be harmful to another carrier. There was no such evidence in this case. On this point, Jenkins and Fenner rely heavily upon *Cooper v. Illinois Commerce Com.* (1977), 49 Ill. App. 3d 398, 402, 364 N.E.2d 396, 399, wherein the court said:

> "To be sure, dormant services should not be reinstated without a showing of public need. Those opposing such a transaction must establish with some particularity the extent to which their operations might be harmed by approval of the application. This is in accord with relevant Federal authorities. See *Be-Mac Transport Co. v. Illinois Commerce Com.* and cases cited therein."

We agree, however, with the Commission that the language in *Cooper* concerning the necessity of showing harm is *dictum*, for the court was not in fact faced with the question whether possible harm must be shown to another carrier before the Commission is justified in striking abandoned territory from a carrier's operating authority. Furthermore, the *Be-Mac* case is weak authority for the proposition that the Commission must have evidence of harm before it in order to make a finding of abandonment. In *Be-Mac*, the court referred to some Federal cases cited by the parties and described them as "relevant in that several affirm the rule * * * that those opposing transfer (appellees) must establish with some particularity the extent to which their operations would be harmed by approval of the application * * *." (*Be-Mac Transport Co. v. Illinois Commerce Com.* (1967), 38 Ill. 2d 154, 158-59, 230 N.E.2d 216, 219.) The court noted, however, that these Federal cases are not binding upon the Illinois Commerce Commission. The court said that even if the Commission "were * * * disposed to follow" the Federal cases, the parties in *Be-Mac* had failed to offer any proof of harm. 38 Ill. 2d 154, 160, 230 N.E.2d 216, 219.

*Be-Mac's* rather equivocal language is too feeble a foundation to support the structure that Jenkins and Fenner and the *Cooper* case have sought to build upon it. We agree with the Commission that *Be-Mac's* discussion concerning harm to other carriers is *dictum*. Once the court had decided that the evidence showed there was no abandonment, it was unnecessary for the court then to consider whether a showing of harm was needed. The same is true of *Knox Motor Service, Inc. v. Illinois Commerce Com.* (1979), 77 Ill. App. 3d 590, 396 N.E.2d 280.

■■ Thus, no Illinois case appears to have been decided upon the issue whether the Commission can find that a common carrier has abandoned a part of its operating authority, absent evidence in the record showing that other carriers would be harmed by reactivation of dormant authority. In this case, we must decide that issue, and we hold that such harm need not be shown.

At the time this hearing was held, section 18—309(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½; par. 18—309(c)) required the Commission to make three findings prior to allowing transfer of operating authority from one common carrier to another: (1) that the proposed transferee is fit, willing, and able; (2) that the operations of the proposed transferor have not been abandoned, suspended, or discontinued; and (3) that the proposed transaction will be consistent with the public interest and declarations of policy found in section 18—101. Evidence of harm would be relevant to the question of whether the transfer will be consistent with the public interest. Thus, the interests of other carriers are properly considered under this third inquiry, not in determining whether there has been an abandonment.

The *Cooper* and *Be-Mac dicta* upon which Jenkins and Fenner rely were prompted by Federal cases. The relevant section of the Interstate Commerce Act, however, is quite different from our section 18—309(c). Section 5(2)(b) of that Act (49 U.S.C. §5(2)(b)(1976)) provides in part:

> "If the Commissioner finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subdivision (a) [which describes the kinds of transactions the Commissioner can approve] of this paragraph and *will be consistent with the public interest*, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable." (Emphasis added.)

Thus, the Interstate Commerce Commission does not make a three-point inquiry but rather considers all factors—including whether there has been an abandonment and whether other carriers will be harmed by a transfer—under the rubric "public interest." Our statute, however, does not call for such a blending of factors. In this case, the Commission found that the transfer it allowed was consistent with the public interest under section 18—309(c)(3). This was the inquiry in which possible harm to competing carriers would have been considered. Harm simply was not a part of the abandonment issue. This conclusion is supported by the fact that courts have, even after the *Be-Mac* and *Cooper* decisions, upheld findings of abandonment without discussing whether harm to competitors also had to be shown. *Hamilton v. Illinois Commerce Com.* (1970), 47 Ill. 2d 264, 265 N.E.2d 156; *Salon Trucking Co. v. Illinois Commerce Com.* (1980), 84 Ill. App. 3d 604, 406 N.E.2d 46; *Carta-Back, Inc. v. Illinois Commerce Com.* (1978), 64 Ill. App. 3d 370, 381 N.E.2d 32.

■■ The manifest weight of the evidence supports the Commission's order finding abandonment of the authority to make a shipment both originating and terminating south of Route 36. However, because the

evidence showed that Fenner had continued to exercise its authority to make shipments with in-transit stops south of Route 36, we reverse the circuit court's order and remand this case to the trial court with directions to remand to the Commission for proceedings consistent with this opinion. See *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 443, 303 N.E.2d 398.

Reversed and remanded with directions.

LEWIS and GREEN, JJ., concur.