RON SMITH TRUCKING, INC., Petitioner-Appellant, *v.* ILLINOIS COM-
MERCE COMMISSION, Respondent-Appellee.—(Douglas Transit, Inc., In-
tervenor-Appellee.)

Fourth District   No. 4—82—0672

Opinion filed May 13, 1983.

Gary L. Smith, of Douglas G. Brown, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, and Mary Kathleen Nolan, Assistant Attorney General, of counsel), for appellee Illinois Commerce Commission.

Robert T. Lawley, of Routman & Lawley, Ltd., of Springfield, for appellee Douglas Transit, Inc.

JUSTICE TRAPP delivered the opinion of the court:

Petitioner Ron Smith Trucking (Smith) appeals an order of the circuit court of Sangamon County, sitting in administrative review, which affirmed a decision of the Illinois Commerce Commission (Commission) to grant Douglas Transit, Inc. (Douglas), a dismissal of its application for authorization to transfer a controlling stock interest pursuant to section 18—309 of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, par. 18—309). We affirm.

On March 5, 1980, Gary Armstrong, Harold Smith, Fred Andres, and Clarence Alley filed with the Commission a petition for authorization to sell a controlling interest of Douglas Stock to Andres and Alley. The petition alleged that Armstrong and Smith were owners of 55% and 45%, respectively, of the shares of Douglas and were negotiating with Andres and Alley to sell a total of 50% of the stock with the result that all four would own 25% of the shares. Petitioner Smith, along with a number of other regulated motor carriers, was granted leave to intervene in the proceedings, and nine separate hearings were conducted on the application for transfer. The bulk of the evidence received concerned the scope of Douglas' operating authority, its alleged abandonment of such authority, and the alleged unlawful control of Douglas by Harold Smith. On May 29, 1981, the hearings were concluded and the matter was marked, "Heard and taken for decision."

On November 18, applicants Armstrong, Smith, Andres and Alley

filed a petition to withdraw the application for acquisition of control with the Commission on the grounds that adverse economic conditions and the financial inability of the purchasers prevented the parties from consummating the sale of the stock. Objections were filed to the petition to withdraw by several intervenors, but the Commission granted the request and dismissed the petition. Smith moved for rehearing which was denied, and the circuit court of Sangamon County affirmed the Commission's decision.

The main contention advanced by Smith on appeal is that the Commission erred in refusing to make findings on its claim that Douglas had abandoned its authority to transport general commodities, had been unlawfully controlled by Harold Smith, and had unlawfully leased its authority in violation of sections 18—309 and 18—308 of the Illinois Motor Carrier of Property Law. Petitioner argues that such violations were shown by the evidence, but whether they were is not at issue in the present appeal. The only issue to be decided by this court is whether the Commission erred in declining to make findings on those issues.

Section 18—309 of the Illinois Motor Carrier of Property Law provides, *inter alia*, that before a controlling interest in a motor carrier may be transferred to another carrier or person, the parties requesting such action must petition the Commission for authority therefor and demonstrate with affirmative proof that the purchaser is fit, willing, and able, that the operations of the proposed seller have not been abandoned, suspended, or discontinued, and that the transaction proposed will be consistent with the public interest and declaration of policy set forth in section 18—101 of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, par. 18—101). *Jenkins Truck Line, Inc. v. Illinois Commerce Com.* (1981), 96 Ill. App. 3d 650, 422 N.E.2d 640.

Under section 18—309, the Commission's jurisdiction to make findings on these issues is conditioned upon the presence of, *inter alia*, an application to transfer a controlling interest. As set forth in section 18—309(3):

> "When a transaction is proposed under this section, the carrier or the person seeking authority therefor shall present an application to the Commission. The application shall contain a copy of the contract, including the terms of the proposed transaction, and an abstract of shipments performed by the transferring party within the last year prior to the date of such contract. The Commission shall, after due notice, set the application for a public hearing to determine whether the find-

ings specified below may properly be made. When the Commission finds that (a) the purchaser or lessee is fit, willing and able, (b) that the operations of the proposed seller or lessor have not been abandoned, suspended, discontinued or dormant and (c) that the transaction proposed will be consistent with the public interest and the declaration of policy set forth under Section 18—101, it shall enter an order approving and authorizing the transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable." Ill. Rev. Stat. 1981, ch. 95½, par. 18—309(3).

It is Smith's contention that notwithstanding the abandonment of the proposed transfer by the applicants the Commission was required to make those findings required by statute as a condition of transfer. It relies on *Salon Trucking Co. v. Illinois Commerce Com.* (1980), 84 Ill. App. 3d 604, 406 N.E.2d 46; sections 18—201(5) and (6) of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, pars. 18—201(5), (6)), and section 79 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 83).

In *Salon*, Salon Trucking and Salon Piggyback Service filed an application for the transfer of a certificate of public convenience and necessity with the Illinois Commerce Commission pursuant to section 18—309. Following hearings on the transfer, the Commission granted the request but modified the scope of operating authority originally contained in the certificate to reflect the abandonment of some operations by Salon Trucking. Both the transferor and the transferee subsequently moved to vacate the transfer order and reinstate in full Salon's operating authority because the sale was not completed. The Commission vacated the transfer order but declined to reinstate Salon's original authority. Salon then filed a petition for rehearing which was granted but, before the hearing, the Commission issued a rule to show cause why Salon's certificate to operate should not be revoked for failing to obtain the Commission's approval to abandon authority as required by section 18—308. (See Ill. Rev. Stat. 1981, ch. 95½, par. 18—308.) Following rehearing, the modified order limiting Salon's operating authority was affirmed.

Salon then sought review in the circuit and appellate courts on the theory that the Commission lacked the authority to modify its operating authority under section 18—309 when the proposed transfer had been abandoned. The appellate court disagreed, holding that since the Commission could, on its own initiative, enforce the provisions of the Act under section 18—307 (Ill. Rev. Stat. 1973, ch. 95½, par. 18—307), the fact that the sale had not been completed did not impair the

Commission's jurisdiction to modify Salon's certificate. The appellate court's rationale was that the Commission possessed the authority to investigate violations under section 18—307 and no purpose would be served by holding the present order unlawful only to require another hearing at which the same issues would again be litigated.

Smith argues that *Salon* is controlling and requires the Commission to make findings on the issues presented in the proceeding to transfer control under section 18—309. We disagree.

■ At bar, it is also clear that a proceeding under section 18—307 could be brought by the Commission. The fact which distinguishes *Salon* from the present proceeding, however, is simply that the question in *Salon* was whether the Commission had jurisdiction to decide the issues, whereas at bar petitioner asserts that the Commission had a duty to exercise its jurisdiction. Neither section 18—309 nor *Salon* indicates that the Commission has a duty to make the findings requested by petitioner.

Further support for the Commission's position is found in this court's decision in *Service Transportation Lines, Inc. v. Illinois Commerce Com.* (1979), 77 Ill. App. 3d 52, 395 N.E.2d 1119, which also addressed a contention that the Commission was required to make findings under section 18—309 of the Illinois Motor Carrier of Property Law. In that case, certain applicants filed a petition with the Commission requesting approval of a sale of a 40% interest in a motor carrier. Several intervenors appeared before the Commission and requested the hearing examiner to make findings under section 18—309 regarding the applicant's abandonment of certain operating authority. The Commission found that it was not necessary that it make the findings under section 18—309 since those findings were required only when a transfer of control was proposed which the sale of a 40% interest was not. On appeal, we upheld the Commission, stating:

> "We hold that the Commission may first determine whether a transaction at issue is one contemplated by section 18—309 before it is required to undertake hearings *and make findings pursuant to that section.*" (Emphasis added.) 77 Ill. App. 3d 52, 55, 395 N.E.2d 1119, 1121.

Smith attempts to distinguish this case and claims, "[t]here is no issue in the present case that the proposed transaction was not within the scope of 18—309." This is an understatement at best. It overlooks the more important point that there was no proposed transaction at the time the Commission was ready to decide the propriety of granting the transfer request. Thus, as in *Service Transportation,* nothing was presented within the scope of section 18—309 to be decided. No

transfer of control was present in either case.

The other authorities upon which Smith relies are sections 18—309(6) and 18—201(5) of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, pars. 18—309(6), 18—201(5)) and section 79 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 83).

■ Neither section 18—309(6) nor section 18—201(5) imposes a duty on the Commission to investigate claims of unlawful control or abandonment absent a proper complaint to the Commission. These sections provide the Commission with discretionary authority to investigate violations of the Illinois Motor Carrier of Property Law but nowhere require the Commission to investigate or make findings. Section 18—201(5) provides, in part:

> "Upon complaint in writing by a person, organization or body politic, *the Commission* shall, or *upon its own motion may* without complaint, *investigate* whether a motor carrier of property or a person otherwise required under the provisions of this Chapter 18 to comply with this Chapter 18 has failed to comply with a provision of this Chapter 18 or a requirement established pursuant thereto." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 95½, par. 18—201(5).

The most persuasive authority favoring Smith's position is section 79 of the Public Utilities Act which is incorporated in the Illinois Motor Carrier of Property Law by section 18—900 of that Law. (Ill. Rev. Stat. 1981, ch. 95½, par. 18—900.) This section provides:

> "It is hereby made the duty of the Commission to see that the provisions of the Constitution and statutes of this State affecting public utilities, the enforcement of which is not specifically vested in some other officer or tribunal, are enforced and obeyed, and that violations thereof are promptly prosecuted and penalties due the State therefor recovered and collected, and to this end it may sue in the name of the People of the State." Ill. Rev. Stat. 1981, ch. 111⅔, par. 83.

■ Smith did not argue the applicability of this section before the Commission or the circuit court, but focused only on the Commission's duty to make findings under section 18—309. It is clear that points not included in a motion for rehearing before the Commission are waived on appeal. Ill. Rev. Stat. 1981, ch. 111⅔, par. 71; *Chicago Area Recycling Group v. Illinois Commerce Com.* (1978), 58 Ill. App. 3d 769, 374 N.E.2d 1008.

■ Even absent waiver, we find section 79 inapplicable here. The order we are asked to review concerns the Commission's duty under

section 18—309 to make findings following the abandonment of a proposed transfer request. That the Commission has a duty to enforce the provisions of the Illinois Motor Carrier of Property Law does not compel the conclusion that it must refuse to dismiss a petition for transfer under section 18—309 when the request for transfer becomes moot.

Smith also argues that the Commission's failure to make findings under section 18—309 denied it due process of law. No such argument was presented to, considered or decided by, the Commission or the circuit court and we decline to consider the argument now. Ill. Rev. Stat. 1981, ch. 111²/₃, par. 71.

Petitioner next urges us to remand the case to the Commission with directions to apply the doctrine of collateral estoppel and reduce the scope of the Douglas certificate of public convenience and necessity. In *Brink's, Inc. v. Illinois Commerce Com.* (1982), 108 Ill. App. 3d 186, 439 N.E.2d 1, this court held that Douglas' certificate of public convenience and necessity did not authorize the transportation of armored car commodities under language providing authority to move intrastate "livestock, farm products, feed, coal, merchandise, furniture and commodities general." Petitioner argues that Douglas is now collaterally estopped on the issues necessarily decided in *Brink's* and that the Commission erred in failing to reduce the scope of its certificate.

■ The doctrine of collateral estoppel or estoppel by verdict generally provides that issues previously litigated and necessarily determined in a former suit may not be relitigated by the parties to the former suit. (*Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 431 N.E.2d 1096.) The only issue previously litigated and necessarily determined in *Brink's* was that Douglas had no authority to haul armored car commodities. Here, the issue presented for decision is whether the Commission properly dismissed the petition for authorization to sell a controlling stock interest. We see no basis to apply the doctrine of collateral estoppel.

■ Finally, Douglas has raised the argument that the Commission disregarded section 18—601 of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95¹/₂, par. 18—601) by failing to rule on the petition for transfer within 90 days from filing. Section 18—601 provides, in part:

> "Applications for authority to operate. (a) Application for authority to operate either as a common or contract carrier, or for any extension of existing operating authority, shall be made in writing to the Commission, be verified under oath, and be in

such form and contain such information as the Commission shall, by regulation, require, and shall be accompanied by the required filing fee. \*\*\* The Commission shall enter a decision or order granting or denying an application in whole or in part within 90 days of the conclusion of the hearing. \*\*\*"

Although not raised by the parties, we note that Douglas appeared in both the circuit court and this court as an intervenor arguing in favor of the decision of the Commission although it filed no petition for rehearing or appeal. The issue now raised by Douglas attacks the Commission's order apparently on the grounds that it lacked jurisdiction to enter the same since it was not made within the time required by section 18—601 of the Illinois Motor Carrier of Property Law. This cannot be done in the manner undertaken here. Section 67 of the Public Utilities Act which is incorporated into the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, par. 18—900) provides, in part:

"\*\*\* No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission. \*\*\*" (Ill. Rev. Stat. 1981, ch. 111⅔, par. 71.)

Section 68 of the Public Utilities Act provides, in part:

"\*\*\* No circuit court shall permit a party affected by any rule, regulation, order or decision of the Commission to intervene or become a party plaintiff or appellant in such court who has not taken an appeal from such rule, regulation, order or decision in the manner as herein provided. \*\*\*" Ill. Rev. Stat. 1981, ch. 111⅔, par. 72.

In *L.S. Heath & Sons, Inc. v. Marathon Oil Co.* (1977), 56 Ill. App. 3d 440, 371 N.E.2d 1139, these two sections were construed to allow a party to a Commission proceeding to intervene in the circuit court and argue in favor of the Commission's decision despite the absence of a petition for rehearing or an appeal from the Commission. However, we do not believe that it is possible to construe these sections to permit an intervenor to appear here and argue against the Commission's decision on a ground neither urged below in a petition for rehearing nor in the circuit court on appeal. We conclude that Douglas' argument concerning the scope and effect of section 18—601 is not properly before us.

As noted by the parties, the scope of our review of a Commission decision is circumscribed by section 68 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 72; ch. 95½, par. 18—900), upon which review only the reasonableness and lawfulness of the order is

644

at issue. We conclude that the Commission's refusal to make findings under section 18—309 following an abandonment of a request for approval thereunder is both a lawful and a reasonable interpretation of that section.

Affirmed.

WEBBER, P.J., and GREEN, J., concur.